HANNAH LIDDY, Respondent, v. THE ST. LOUIS RAILROAD COMPANY, Appellant.

1. *Railroad Corporations—Negligence.*—The peculiar character of the vehicles employed by street railroads running through the crowded thoroughfares of a city makes it incumbent upon every company to exercise care and diligence to avoid collisions and accidents; no other rule can be recognized as compatible with the safety and security of the public. But this rule does not dispense with the care and prudence required of all persons using the street in common with the railroad company.

2. *Railroad Corporations—Municipal Corporations—Negligence.*—The ordinance of the City of St. Louis regulating the running of cars on the street railroads within the limits of the city, imposes certain duties on the companies, and the violation of such regulations shows negligence in the management of the cars on such roads.

*Appeal from St. Louis Circuit Court.*

This case was tried upon the issues made by the petition and answer.

The plaintiff in her said petition, after alleging that she was the wife of Michael Liddy, and that the defendant was a corporation possessed of a street railway along Broadway and Fifth street in the city of St. Louis, averred "that it was the duty of said defendant at all times, when running their cars along said streets, to keep a vigilant watch for all vehicles and persons on foot, either on the track or moving towards it, and on the first appearance of danger to stop the cars in the shortest time and space possible, and to otherwise observe and perform all the municipal regulations and rules imposed upon said defendant by city ordinance No. 4564, entitled ' An ordinance in relation to street passenger railways,' approved December 27, 1859. But plaintiff says the said defendant, on or about the 31st day of December, A. D. 1864, wholly disregarding its duty in every respect and the provisions of the aforesaid city ordinance, by its agents, servants, and employees, so negligently, unskilfully and with criminal intent run and conducted one of its said cars along the aforesaid streets that the same was run over Michael Liddy, husband of plaintiff, as aforesaid, without any fault upon his part, whereby he was killed, and that his death resulted from the injuries then and there caused by the negligence, unskilfulness and criminal intent of the said defendant, its agents and servants as aforesaid, whereby and by reason of the statute in such cases made and provided defendant has forfeited and become liable to pay plaintiff the sum of five thousand dollars damages, for which she asks judgment."

Defendant by its answer to the amended petition put in issue the material allegations of the petition—denied negligence, carelessness or criminal intent on the part of its agents and servants—and averred that if Michael Liddy received the injuries complained of, it was in consequence of his own negligence and carelessness, and not through any fault of defendant.

Albert L. Allen, for plaintiff, stated that on the evening of the 31st of December, 1864, between 7 and 7½ o'clock, he

was standing on the west side of Broadway, opposite Bates street, when "a car of the Fifth-street railroad line was coming up defendant's track from the Arsenal, proceeding north towards Bremen; it was going at the rate of from seven to eight miles an hour, which is faster than they generally drive. It was a starlight night and the gas-lamp at Chapman & Thorpe's corner, as well as the lamp on the other side of Bates street, were lit. I could see a man a half square by that light, and a car or train at least a square or two off. * * * I saw deceased for the first time just before the horses' heads reached him; he was coming over from the east to the west side of the street; I had not noticed him before that moment of time; he hallooed, 'Oh!' fell, and the car passed over him. * * * The car went on ten or fifteen yards after it run over him before it stopped."

Upon cross-examination, he stated that the deceased was just at the horses when witness first observed him; that he has seen cars run on Broadway, opposite his house, eight miles an hour every day; that he has at times seen cars driven as fast, and perhaps faster, than the car in question; that he has seen carriages driven through the streets faster than this car, and that he has never found it impossible to get out of the way of a carriage or car driven as fast as this car was driven at the time of the accident. Being interrogated whether he had not, at the previous trial, said he could not tell the rate of speed at which the car was going, he answered in the affirmative, and said that he "merely guessed" that they were going at that rate, being the rate of seven to eight miles an hour.

Hubert Schilt, plaintiff's second witness, said, that he and a friend of his, on the occasion in question, were on the east side of Broadway, about 80 yards north of Bates street; that he could see a man at Bates street, and a car 400 to 500 yds. off to the south. In reference to the occurrence itself, he said: "The car was coming up very fast, going from south to north; the man, who was afterwards killed, was in the street; he was going across the street, with chickens in one

Liddy v. St. Louis R.R. Co.

hand; he was going over the street kind of crossways towards the west. My friend said: 'If that man don't look out, he will be hurt.' The car continued on, and the man was struck either by the tongue or the horses; he fell and the car went over him; I saw him afterwards at the police station—he was dead."

On cross-examination, he stated: "When I first saw the deceased, he was about half way in the street between the curbstone on the east side of Broadway and the railroad track; the car was perhaps 40 or 50 yards from him, perhaps more—I can't say; he was going diagonally across the street; I can't say how far he was south of the flat-stone crossing on Bates street. * * * He continued to walk on; I don't know whether he noticed the car or not; I don't know whether he saw it or heard it, but he did not stop; I can't say whether he stumbled and fell, or whether the horses or tongue hit him; he was run over."

Patrick Fleming said: "I was a passenger in the car that night, and felt a jolting as if the car was going over a big rock; it went over and 10 or 15 yards beyond; the car was going at fast speed." Quest. by plaintiff: "How many miles per hour was the car going at, at that time?" Objected to by defendant because "it does not appear that witness is competent to judge of the rate of speed of a street car, or that he has ever had charge of the running of a car, or any experience in the running and management of street cars which will enable him to form or express a correct opinion as to their rate of speed when moving." Objection overruled, to which defendant then and there duly excepted; and the question being repeated, the witness answered as follows: "The car was going at the rate of 7 or 8 miles per hour."

Cross-examination. "I did not know Michael Liddy in his lifetime. I have never had the management of a team; I am a laborer. The lamps were lit in the car. I don't know why I recollect that the cars were going fast, but I do recollect it. I have seen cars driven as fast, and carriages faster. I thought it was a rock on the track. When the car stopped,

33—VOL. XL.

we got out, and found the man on the track; he was afterwards taken away."

This was plaintiff's testimony as to the occurrence; she also introduced the coroner to prove the character of the injuries received by the deceased, and two witnesses to prove her marriage and the identity of the deceased, and closed.

At the close of the plaintiff's testimony, defendant asked the following instruction, viz.: 1. "Upon the evidence in this cause, the plaintiff is not entitled to recover"; which the court refused to give, to which defendant excepted.

Defendant, by three witnesses, offered evidence tending to prove that the car, on the occasion in question, was driven at a usual and moderate rate of speed not exceeding from $4\frac{1}{2}$–5 miles an hour; that the signal lights were up in the car; that the horses had bells on; that the car was in proper condition, the brakes in good order, the horses properly geared, the driver and conductor at their posts and attending to their duty; that the night was cloudy and foggy; that when the car got near the south crossing of Bates street, the conductor, wishing to let out a passenger, rang the bell as a signal to the driver to stop, when the latter immediately applied the brakes, but, after giving them one twitch, the horses plunged forward, carrying the car with them and over an object, which afterwards turned out to be the deceased. The driver swore that "if a man had been standing up in the street, I reckon I could have seen him when I got near Bates street. I could not have seen a man lying on the track; the night was dark, and that part of the street was not in the range of the lights. I kept a sharp watch on my horses and of the track ahead, but saw no man in the street. If he had been standing up in the street, I would have seen him. I did not notice anything until the horses jumped and jerked the car ahead."

It also appeared that the corpse of the deceased, after the car had passed over him, was lying about midway between the crossings in the centre of the street, with his head to the south and his feet to the north.

Liddy v. St. Louis R.R. Co.

The plaintiff thereupon prayed the following instructions, which the court gave:

1. If the jury believe from the evidence that plaintiff was at the time of the injury to and death of Michael Liddy the lawful wife of said Liddy, deceased, and that said Liddy died from an injury resulting from or occasioned by the negligence, unskilfulness or criminal intent of the defendant's agents or servants while running, conducting or managing one of their cars, and deceased used ordinary or reasonable care at the time to prevent said injury, the defendant is liable in this action, and the jury will find for the plaintiff.

2. The fault or negligence of the deceased which will preclude a recovery by the plaintiff *if there was mutual negligence*, is not the least degree of fault or negligence, but it must be such a degree as amounted to the want of ordinary or reasonable care on the part of the deceased at the time of the injury. By ordinary or reasonable care is meant that degree of care which may be reasonably expected of a person in deceased's situation.

3. Although deceased may have been guilty of misconduct or negligence which contributed remotely to the injury, yet if the misconduct, negligence, unskilfulness or criminal intent of the defendant, its agents or servants, was the immediate cause of the injury, and with the exercise of prudence and care defendant might have prevented the injury, then it is liable and the jury will find for plaintiff.

4. If the jury find for the plaintiff, they will assess damages at five thousand dollars, that being the amount fixed by law.

5. The jury are to determine as to the credibility of the witnesses, and should give to the evidence of each just such weight as they may think it entitled to; and if they believe any witness in the case has wilfully sworn falsely as to any material matter, they may disregard all of his or her testimony.

To the giving of which instructions, and to each and every one of them, defendant then and there duly excepted.

And defendant thereupon asked the following instructions, namely:

2. The jury are instructed that if the driver and conductor of the defendant's car were at their posts of duty, and were exercising that degree of care and prudence in the management of said car which men of common sense and common prudence ordinarily exercise under like circumstances, then there was no negligence on the part of the defendant, and the plaintiff cannot recover. If they should believe, however, that said driver and conductor, or either of them, did not exercise this degree of care or prudence, but were negligent and careless in the management of said car, then they will inquire whether there was any negligence or imprudence on the part of the deceased without which the injury could not have happened; and if they find that there was such negligence and imprudence on his part, then they will find for defendant, notwithstanding they may also believe that the agents and servants of defendants were guilty of negligence and carelessness.

3. If the jury believe that the deceased, before attempting to cross Broadway, could have observed the approach of the car, but failed to look or listen, this was negligence on his part; if he saw its approach and yet attempted to pass when it was so close upon him as to endanger his safety, this was likewise negligence, and in either case the plaintiff is not entitled to recover.

Which instructions the court refused to give; to the refusing of which defendant excepted.

And defendant also asked the following instructions:

4. To entitle the plaintiff to recover, she must prove affirmatively: First—That she was the lawful wife of Michael Liddy, deceased, at the time of the latter's death. Secondly—That the deceased was guilty of no negligence or carelessness on his part in the collision which caused his death. Thirdly—That his death resulted from injuries occasioned solely by the negligence or carelessness of the agents and servants of the defendant, and that he in nowise contributed

to bring about the occurrence which caused his death ; and if the deceased in any way contributed to the injuries which produced his death, it is immaterial to inquire who was more in fault, whether the deceased or the defendant, for unless the deceased was entirely free from fault the plaintiff cannot recover. If the plaintiff has failed to establish any one of these propositions to the satisfaction of the jury, the verdict must be for the defendant.

Which instruction the court refused to give, but of its own motion interlined the same, and gave it to the jury as follows:

4. To entitle the plaintiff to recover, he must prove affirmatively : First—That she was the lawful wife of Michael Liddy, deceased, at the time of the latter's death. Secondly—That the deceased was guilty of no negligence or carelessness on his part in the collision which caused his death, *and which directly contributed thereto*. Thirdly—That his death resulted from injuries occasioned solely by the negligence or carelessness, *or criminal intent*, of the agents and servants of the defendant, and that he in nowise *directly* contributed to bring about the occurrence which caused his death ; and if the deceased in anywise *directly* contributed to the injuries which produced his death, it is immaterial to inquire who was more in fault, whether the deceased or the defendant; for unless the deceased was entirely free from fault *as to any act which directly contributed to his death*, the plaintiff cannot recover. If the plaintiff has failed to establish any one of these propositions to the satisfaction of the jury, the verdict must be for the defendant.

To the giving of which instruction as interlined by the court the defendant then and there duly excepted.

Defendant also asked the following instructions, which were given :

5. If the jury believe that the death of Michael Liddy was the result of accident or misadventure, the plaintiff is not entitled to recover.

6. If the jury believe that Michael Liddy either by accident stumbled and fell, or that he was knocked down by some force or agency before defendant's car reached him, and was run over in consequence of thus lying upon the track, and without the fault of defendant's servants, then the jury will find for defendant.

The case being submitted to the jury under the foregoing instructions as given by the court, a verdict was returned for the plaintiff in the sum of five thousand dollars.

*Woerner & Kehr*, for appellant.

I. The demurrer should have been sustained.

(*a*) The petition contains several causes of action contained in one count. The plaintiff seeks to recover for the violation of a city ordinance, and also for injuries arising from the negligence of defendant's servants—McCoy v. Yaeger, 34 Mo. 113; Clark's Adm'r v. Han. & St. Jo. R.R., 36 Mo. 215.

(*b*) The petition states no cause of action under section 2 of the statute "for the better security of life, property, or character."

II. In order to recover, the plaintiff must show by affirmative proof, 1st, that deceased exercised ordinary care on his part; and 2d, that the injuries of which he died were the result of defendant's negligence. "These essential elements of such a cause of action are as absolutely distinct from and independent of each other as are the two opposing parties, and each and both must be *by itself* in the case upon the evidence or there can be no recovery"—Wilds v. Hudson River R.R. Co., 24 N. Y. 32; S. C. 29 N. Y. (2 Tiff.) 315; Gahagan v. B. & L. R.R. Co., 1 Allen, 187–90; Spooner v. Brooklyn C. R.R., 31 Barb. 419; Stinson v. N. Y. C. R.R. Co., 32 N. Y. (5 Tiff.) 333.

The instruction asked by defendant at the close of plaintiff's testimony, to the effect that plaintiff was not entitled to recover, should have been given.

(*a*) There was no sufficient proof of defendant's negligence.

(*b*) There was absolutely no proof that deceased had exercised due care. "If the plaintiff fails to prove that he used due care to avoid the collision, the court should instruct that he is not entitled to recover"—Shaw v. Boston & W. R.R., 8 Gray, 73 ; Gehagan v. Boston & L. R.R. Co., 1 Allen, 187 ; Denny v. Williams, 5 Allen, 1 ; Warren v. Fitchburg R.R., 8 Allen, 227 ; Butterfield v. Western R.R. Co., 10 Allen, 532 ; 91 Eng. Com. L. 148–9 ; Stevens v. Oswego R.R. Co., 18 N. Y. 422 ; Toomey v. London R.R. Co., 3 C. B. (N. S.) 146 ; 29 Conn. 208–9 ; Philad. R.R. v. Hammil, 44 Pa. 375 ; North Pa. R.R. v. Hilmann, 49 Pa. 60 ; Wilds v. Hudson River R.R. Co., 24 N. Y. 430 ; Clark's Adm'r v. Han. & St. Jo. R.R., 36 Mo. 217 ; Boland et ux. v. Mo. R.R. Co., 36 Mo. 484 ; Smith v. Han. & St. Jo. R.R. Co., 37 Mo. 287.

The case of Huelsenkamp v. Citizens' Railw. Co., 37 Mo., does not sustain the plaintiff. Huelsenkamp was a passenger. There is a broad distinction between defendant's liability to a passenger and its duty to a stranger. Towards a passenger the carrier must " use the utmost care and diligence, whilst as to third persons it is required only to exercise such care and skill as a person of ordinary prudence would use about his business. Towards the one his liability arises from a contract upheld by an adequate consideration ; towards the other, he is under no obligations but that of justice and humanity"—Broad v. Troy & L. R.R. Co., 8 Barb. 378–80 , R.R. Co. v. Norton, 24 Pa. 465 ; State to use, &c. v. Balt. & O. R.R., 397 ; Bannon v. R.R. Co., 5 Amer. Law Reg. (N. S.) 473.

III. Defendant's third instruction should have been given. Before attempting to cross a railroad track, a man should make a reasonable use of his sense of sight as well as of hearing in order to ascertain whether he will expose himself to a collision. If he fails to use his senses without reasonable excuse, he fails to use reasonable care—Butterfield v. Western R.R. Co., 10 Allen, 532.

" It is the duty of a traveller when approaching the intersection of a railroad with a common highway to look out for approaching trains or engines, and if he fails to take this precaution he is guilty of negligence, and the court should so declare as a matter of law"—North Pa. R.R. Co. v. Hilmann, 40 Pa. (13 Wright) 60. To the same effect are Wilds v. Hudson Riv. R.R., 24 N. Y. 440; S. C. 24 N. Y. 328; Reeves v. D. & L. R.R. Co., 6 Carey, 464.

*Hudgens & Son,* for respondent.

I. The motion to strike out and demurrer to pleading having been overruled at October term, 1865, and no final judgment rendered on said action of the court below, and no bill of exceptions or appeal taken at said term, this court will not review such action on appeal from the judgment at October term, 1866—R. C. 1855, p. 684, § 11; id. p. 1287, § 11; 8 Mo. 619; 9 Mo. 269; 27 Mo. 422; 13 Mo. 455, & p. 4; 26 Mo. 67; 4 Mo. 456 & 622.

II. There having been no motion in arrest of judgment filed in the court below, this court will not review any errors now assigned in the pleadings—13 Mo. 455 & 215; 10 Mo. p. 515; 7 Mo. 416; 15 Mo. 143; 4 Mo. 438; 6 Mo. 50; 9 Mo. 624.

III. There being evidence of record from which the jury found their verdict, this court will not review their finding in the absence of any marks of fraud or malicious intent on the part of the jury. The jury are judges of the facts from the witnesses before them, and this court can only review questions of law—Meyer v. Pacific R.R., *ante* 153.

The 1st instruction given by the court at the instance of plaintiff declared the law properly. It is a statement of the statute under which this action was brought, with the addition of the modification given to it by the court, that " deceased must have used ordinary or reasonable care at the time in order to recover"—R. C. 1855, p. 647, § 2.

The 2d instruction given at the instance of plaintiff declared the law correctly. It was not the least degree of fault

or negligence of deceased which would preclude the plaintiff from recovering, but it must have been such a degree as amounted to the want of ordinary or reasonable care in order to preclude plaintiff; and if he used ordinary or reasonable care he could not be deemed to have contributed to the injury, and the instruction was proper—Huelsenkamp v. Citi-Railw. Co., 37 Mo. 537; 17 Barb. 94; 1 E. D. Smith, 36; 4 id. 21; 12 Cush. 197; 8 Gray, 79.

The 3d instruction given for plaintiff declared the law applicable to cases of mutual negligence correctly. Every leading case from Lynch v. Meriden, Q. B., down to the recent decision of Huelsenkamp v. Citizens' Railw. Co. and Meyer v. Pacific Railw. Co., in this court, have affirmed the principle of the instruction that plaintiff can recover when his negligence was only the remote cause and that of the defendant the immediate cause of the injury. This is the settled law of every leading case.—English cases: Lynch v. Meriden, 1 Q. B. 29; 12 id. 437; 9 Car. & P. 601–13 & n.; 3 M. & W. 224; 10 id. 546; 1 Man. & Gr. 568; 5 Exch. 239–243.— American authorities: Red. on Railw. 330–1, marg.; Huelsenkamp v. Citizens' Railw. Co., 37 Mo. 537; 34 Mo. 127, 177, 235; 3 Ohio, 172; 2 Amer. Railw. Cas. 118; 19 Conn. 566; 16 Conn. 420; 24 Vt. 487; 20 Ohio, 426; 9 Ohio, 397; 31 Miss. 156; 4 Zab. 824; 5 Denio, 255; 1 id. 91; 39 Mc. 276; 22 Vt. 213, 224; 3 E. D. Smith, 103–9; 19 Conn. 507; 12 N. Y. 425–9; 9 Rich. 84; 23 Pa. 526; Pierce R.R. Law, 276; 4 Ohio, 474; 2 Pick. 621; 12 Metc. 417–18; 7 Cush. 155–61; 8 Gray, 131–2; 17 Barb. 94; Meyer v. Pacific R.R., ante 153; McKay v. N. Y. Central R.R. Co., Am. Law Rég. for May, 1867, p. 617.

The 2d and 3d instructions asked by defendant were properly refused by the court because they undertook to tell the jury what acts constituted negligence, which is the exclusive province of the jury to determine. The court would have usurped the functions of the jury if it had given either of them—Huelsenkamp v. Citizens' Railw. Co., 34 Mo. 45, and

37 Mo. 537; 19 Conn. 566; 33 Mo. 202; 6 Mo. 64; 10 Allen, 535; Meyer v. Pacific R.R., *ante* 153.

The law was properly and fully declared in the instruction given, and it was not error to refuse other instructions although they might have been good declarations of law—30 Mo. 191; 31 Mo. 585.

FAGG, Judge, delivered the opinion of the court.

The respondent recovered a judgment in the Circuit Court of St. Louis county for the killing of her husband, Michael Liddy. It was a suit for damages under the second section of the act entitled "An act for the better security of life, property," &c., R. C. 1855, p. 647. The defendant is a corporation owning and operating a street railway in the city of St. Louis.

Two general questions are presented by the transcript of the record in this case: 1. Was the defendant, through its agents and servants, guilty of the negligence charged? If so, 2. Did the conduct of the deceased indicate a degree of negligence on his part that contributed to produce the fatal result, and thereby relieve the defendant from liability?

It may be remarked generally in reference to these corporations, that the questions growing out of their relations to the public, and the measure of their duty in respect to the care and diligence necessary to be exercised by them have been carefully considered and stated in former cases decided by this court. See particularly Kennedy v. North Mo. R.R. Co., 36 Mo. 351; Boland et ux. v. Mo. R.R. Co., 36 Mo. 484; Huelsenkamp v. Citizens' Railw. Co., 37 Mo. 537, and the authorities there cited. We do not feel called upon to reexamine these questions now. These corporations are created by charters granted by the Legislature of the State, and their roads should be managed and operated in the manner therein directed, as well as in conformity with the ordinances of the City of St. Louis, so far as the same are not inconsistent or in conflict with the legislative grants. The

stipulations and conditions upon which they are permitted to use their railways for the transportation of passengers within the limits of the city are fixed by the terms of a general ordinance. See tit. Railways, Rev. Ord. 1861, p. 550. It is provided by the ordinance that " no car shall be drawn at a greater speed than six miles an hour"; and again, "the conductor and driver of each car shell keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such vehicles or persons the car shall be stopped in the shortest time and space possible." The law confers upon them no exclusive or peculiar rights and privileges. That portion of the street occupied by the railway is, nevertheless, a public highway, open to the use and enjoyment of all persons. The corporation can only use its track for the running of cars by the procuring a licence from the city, containing the conditions, stipulations, and restrictions, above stated. These go very far towards fixing the measure of its duties and liabilities to the public. In addition to this, it may be said that the peculiar character of the vehicles employed, running as they do through the crowded thoroughfares of the city, makes it incumbent upon every company to exercise the utmost care and diligence to avoid collisions. No other rule could be recognized as compatible with the safety and security of the public. The recognition of this rule, however, does not dispense with the care and prudence required of all persons using the street in common with the railroad company. If therefore, in this instance, the conduct of the deceased directly contributed to the injury by a failure on his part to observe ordinary care and diligence, then there ought to have been no recovery against the defendant.

Our inquiries in this case will be confined to the declarations of law given and refused by the court below, with a view of ascertaining whether the issues were properly submitted to the jury or not.

It was a question of fact for the jury, whether the rate of speed of the car at the time of the occurrence was within the

limit fixed by the city ordinance or not. Any thing beyond that is to be regarded as excessive and tending to show the negligence of the defendant. The duty of the defendant's servants and agents to keep a vigilant lookout for vehicles and persons on foot, taking into consideration all the attending circumstances, was also a proper question for the consideration of the jury. Taking the instructions all together, and considering them as a whole, we think they were sufficiently warranted by the evidence, and presented the law of the case fairly to the jury.

The other judges concurring, the judgment of the court below will be affirmed.