## FATH v. TOWER GROVE & LAFAYETTE RAILWAY, *Appellant.*

### DIVISION ONE.

1. **City Ordinance**: STREET RAILWAYS: ST. LOUIS CITY. An ordinance of the city of St. Louis *held* valid which requires conductors and drivers of street cars to keep a vigilant watch for all vehicles and persons on foot, especially for children, either on the track or moving towards it, and that on the first appearance of danger to such person or vehicles the car shall be stopped in the shortest time and space possible.

2. ———: ———: ———. The validity of said ordinance rests on the fact that under the state constitution and city charter street railways are allowed to lay their tracks upon the streets of the city upon the condition of yielding obedience to the city ordinances.

3. ———: ———: ———. The city as a consideration for granting the franchise can require an enhanced degree of care on the company in running its cars.

4. ———: ———: PRIVATE ACTION. A street railway company is liable in a private action at the suit of any person injured by its neglect of the ordinance, and this is the case although a pecuniary penalty is imposed for its non-observance.

5. **Negligence**: INSTRUCTIONS: ERROR. A judgment in an action for negligence will be reversed where the instructions are conflicting as to the degree of care required of defendant.

*Certified from St. Louis Court of Appeals.*

AFFIRMED.

*Hitchcock, Madill & Finkelnburg* for appellant.

(1) Clause 4 of section 1246 of article 6 of the revised ordinances of 1887, of the city of St. Louis, is void in so far as it undertakes to fix a standard of diligence or liability for negligence in civil suits at common law against street railway corporations. 39 Mo. App. 447. (2) The instructions given for plaintiff, in following the language of the city ordinance here in controversy, require a decree of diligence on the part of defendant's servants not warranted by law. The ordinance in question among other things requires defendant's servants in every case of danger to accomplish the utmost physical possibility which can be attained in stopping a car under any circumstances; a measure of diligence not required of a carrier even towards a passenger, much less in respect of a stranger. *Dougherty v. Railroad*, 97 Mo. 647; *Doss v. Railroad*, 59 Mo. 27. (3) The care incumbent on railroad companies after discovering the perilous condition of a person on the track is ordinary or reasonable care. Such is the law of Missouri. *Dunkman v. Railroad*, 95 Mo. 232; *Guenther v. Railroad*, 95 Mo. 286; *Frick v. Railroad*, 75 Mo. 595; *Whalen v. Railroad*, 60 Mo. 323; *Brown v. Railroad*, 50 Mo. 461. (4) A city ordinance cannot change the common-law liabilities of a civil nature between private parties, nor fix a new standard of negligence as a basis for an action on the case. *Heeney v. Sprague*, 11 R. I. 456; *Railroad v. Ervin*, 89 Penn. St. 71; *Van Dyke v. Cincinnati*, 1 Disney, 532; *Flynn v. Canton Co.*, 40 Md. 612; *Kirby v. Boylston*, 14 Gray, 242; *Jenks v. Williams*, 115 Mass. 217. (5) The right of a municipality to regulate the use of its streets by railways does not authorize it to change the fundamental rules of law governing the liabilities of a civil nature—neither to increase nor to diminish them. Ordinances must be in harmony with the general laws of the state. *Railroad v. Railroad*, 72 Mo. 70. (6) The

grant of legislative power to the municipal assembly of the city of St. Louis is expressly limited in its charter to the enactment of ordinances "not inconsistent with the constitution, or any law of this state." Charter, art. 3, sec. 26. And the constitution provides that "such charter and amendments shall always be in harmony with and subject to the constitution and laws of Missouri." *Ewing v. Hoblitzelle*, 85 Mo. 64. ( 7 ) The ordinance provision here in controversy, though sometimes permitted to go unchallenged, has never been distinctly passed upon by this court. The case of *Liddy v. Railroad*, 40 Mo. 506, relied upon by plaintiff, is no exception to the above statement. A close examination of that case will show that the ordinance in question, though referred to in the petition, was ignored in the trial and in the instructions given, and that this court did not have it judicially before it on the appeal. (8) The instructions for plaintiff and defendant respectively are absolutely and irreconcilably contradictory on the question of negligence, so that the case was not submitted to the jury upon any intelligible theory of the law on the subject, and the case ought to be remanded for a new trial on that ground. *Price v. Railroad*, 77 Mo. 508; *Stevenson v. Hancock*, 72 Mo. 612.

*A. R. Taylor* and *David Goldsmith* for respondent.

( 1 ) The validity of the ordinance in question was sustained in *Liddy v. Railroad*, 40 Mo. 506. That decision has been tacitly recognized as establishing the validity of the ordinance, and it is for that reason that it has passed unchallenged, though brought before the courts in *McCarthy v. Railroad*, 92 Mo. 536 ; *Dunn v. Railroad*, 98 Mo. 652 ; *Lamb v. Railroad*, 33 Mo. App. ( 2 ) A street railway company has no general right of occupancy of a street ; only has such right as it may

obtain by special grant, and is subject to whatever limitations the granting power may attach to it. Certainly the exaction of increased vigilance on the part of the railway company toward the general public than might otherwise be requisite is in the very line of what ought to be required, and, if a municipality has the right to prescribe any condition to its grant, that should be the very first. "The right of the city to pass reasonable ordinances for the regulation and government of railways in running trains within the limits is well settled." *Merz v. Railroad*, 88 Mo. 676; *Bergman v. Railroad*, 88 Mo. 684. "A violation of any such ordinance is negligence *per se ;* and, if personal injury to a citizen follows and results from such violation, then the cause of action of the injured party is complete."

SHERWOOD, P. J.—Action by infant, seven years of age, through next friend, for injuries received by the former, in consequence of coming in contact with one of the defendant company's cars, which was alleged to have happened by reason of the negligence of that company, and, also, because of its negligent failure to observe the requirements of subdivision 4, of section 1246, article 6, revised ordinances, 1887, of the city of St. Louis. This was the substance of the petition. Said subdivision 4 reads as follows: "*Fourth.* The conductor and driver of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and, on the first appearance of danger to such persons, or vehicles, the car shall be stopped in the shortest time and space possible."

Section 1251 of the same article provides that "any person, corporation, company or copartnership, or the president, superintendent or manager thereof, violating or failing to comply with any of the foregoing provisions of this article, except as otherwise provided

for, shall be deemed guilty of a misdemeanor, and upon conviction thereof be fined not less than $5 nor more than $500."

The answer of the defendant was substantially a general denial, as well as the following:

"Defendant   *   *   *   charges the fact to be that the boy, Bernard Fath, sustained certain injuries at the time alleged, which injuries were caused by his own acts and conduct in this: That while one of defendant's cars was moving along Columbus street, in the city of St. Louis, in a usual and lawful manner, said child, without the knowledge of defendant's driver, suddenly and unexpectedly, carelessly and negligently ran up to and against the moving car in such manner as to cause it to fall across the track upon which said car was moving; that the driver of said car at the time observed proper care and diligence in the discharge of his duties, and was not guilty of any negligence in the premises. The defendant says that the injuries, if any, sustained by said child   *   *   *   were caused by the improper acts and negligent conduct of said child, as aforesaid, and by the negligence of said child's parents in permitting said child to be upon the public streets without the care or control of an older person, and were not caused by the negligence or fault of this defendant, or any of its agents or servants."

The evidence on behalf of plaintiff tended to show that the plaintiff, Bernard Fath, was a boy between four and five years old when he was injured; that on the twenty-sixth day of July, 1884, between six and seven o'clock, and when it was still daylight, said Bernard was on Columbus street, near Carroll, in the city of St. Louis; that he was either upon defendant's tracks, or approaching same as one of defendant's cars moved northwardly along Columbus street; that the driver of defendant's car either did, or by the exercise of proper care and diligence, could have seen the boy, and that he was in danger, and could have stopped the car

in time to prevent the accident, but that he negligently and carelessly ran against him, resulting in personal injury. Plaintiff's testimony was conflicting as to the extent of the accident, whether a wheel dragged between the brake rod and the front wheel until the car was stopped, but the evidence tended to show that he was knocked down, bruised and injured ; that there were no bones broken, but that he sustained substantial injuries and suffered pains, and was laid up in bed for a period of time, and still showed some effects of the injury in the way of stiffness, nervousness, etc. Plaintiff also offered in evidence the fourth clause aforesaid.

The defendant objected to the introduction of the ordinance on various grounds, among them that : "Said fourth clause of said ordinance is not a lawful rule governing diligence or negligence in this state ; that the same is illegal and void and against the law of the land," and because the city had no right or authority to enact the same ; but the court overruled said objection, and said ordinance was admitted.

The evidence on the part of defendant tended to show that owing to some local disturbance of a trifling character a crowd of men, women and children had gathered on the sidewalk, in front of a house on the east side of Columbus street ; that the plaintiff, Bernard, was in the crowd ; that as the car came along a policeman suddenly scared and scattered the crowd ; that the children ran in various directions ; that plaintiff ran obliquely in a northwestern direction without looking ahead ; that he struck the car between the mule and the dashboard ; that he fell and was caught by the brake rod and dragged along, but that the car was stopped in time to prevent the front wheel from passing over him ; that the driver of defendant's car acted with great promptness and diligence in stopping the car, and that he could not have become aware of the dangerous approach of plaintiff earlier than he did.

The jury found a verdict for the plaintiff in the sum of $600, and there was judgment accordingly, and, on appeal to the St. Louis court of appeals, that judgment was reversed and the cause remanded ; but one of the judges of that court deeming that decision contrary to the decision of this court in *Liddy v. Railroad*, 40 Mo. 506, the cause has been transferred here in conformity with section 6, article 6, of the constitution.

Sections 20, 23 and 25, article 9, of the constitution, require that the charter of the city shall be in harmony with, and subject to, the constitution and laws of Missouri. Section 26, article 3, of the city charter also declares : "The mayor and assembly shall have power within the city by ordinance not inconsistent with the constitution or any law of this state, or of this charter:

"*Second.* To establish, open, vacate, alter, widen, extend, pave or otherwise improve and sprinkle all streets, avenues, sidewalks, * * * and to regulate the use thereof."

"*Fifth.* To license, tax and regulate * * * street railroad cars, livery and sale stables, hackney carriages, private carriages, barouches, buggies, wagons, omnibuses, carts, drays and other vehicles, and all other business, trades, avocations or professions whatever."

"*Tenth.* To impose, collect and enforce fines, forfeitures and penalties for the breach of any city ordinance.

"*Eleventh.* To grant to persons or corporations the right to construct railways in the city, subject to the right to amend, alter or repeal any such grant, in whole or in part, and to regulate and control the same, as to their fares, hours and frequency of trips, and repair of their tracks, and the kind of rails and vehicles."

And sections 1 and 2, of article 10, of the charter, provide that: "The municipal assembly shall have power, by ordinance, to determine all questions arising with reference to street railroads, in the corporate

limits of the city, whether such questions may involve the construction of such street railroads, granting the right of way, or regulating and controlling them after their completion; and also shall have power to sell the franchise or right of way for such street railroads to the highest bidder, or, as a consideration therefor, to impose a *per capita* tax on the passengers transported, or an annual tax on the gross receipts of such railroad, or on each car; and no street railroad shall hereafter be incorporated or built in the city of St. Louis except according to the above and other conditions in this charter, and in such manner and to such extent as may be provided by ordinance." "The assembly shall have power to regulate the time and manner of running cars, and the rates of fare on street railroads now or hereafter to be built, and the sale of tickets and exchange thereof between the several companies, and to tax the property of street railroad companies in such manner as may be provided by law." That charter also contains this provision: "All ordinances in force at the time this charter and scheme go into operation, not inconsistent therewith, shall remain in full force until altered or repealed by the assembly." Sec. 1, art. 16. The ordinance in question was enacted December 27, 1859.

Section 20, article 12, of the constitution also makes provision that: "No law shall be passed by the general assembly granting the right to construct and operate a street railroad within any city, town, village, or on any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad; and the franchises so granted shall not be transferred without similar assent first obtained."

Though the subdivision of the ordinance under discussion has been in existence for over thirty years, its legal validity has never been adjudicated by this court, though incidentally touched upon in several instances.

*Liddy v. Railroad*, 40 Mo. 506 ; *McCarthy v. Railroad*, 92 Mo. 536 ; *Dunn v. Railroad*, 98 Mo. 652. In *Liddy's case* the validity of the ordinance was not raised in any manner in the trial court, and, of course, any utterances in this court on the subject are not possessed of authoritative value. The same may be said of the other cases cited which went off principally on the insufficiency of the testimony on which to base verdicts for the plaintiffs. The point in hand, the legal validity of the ordinance, is, therefore, *res integra* so far as adjudications of this court are concerned. Nor does the case of *Hays v. Railroad*, 70 Tex. 602, cited for plaintiffs, discuss or pass upon the *status* of such an ordinance ; its validity is simply *assumed*.

I.   Proceeding, then, to inquire into the validity of the ordinance, it may be admitted, at the outset, that it is beyond the power of a municipal corporation by its legislative action directly to create "*a civil duty, enforceable at common law;*" for this is an exercise of power of sovereignty belonging alone to the *state*. This position is fully sustained by the authorities cited on behalf of the defendant.

But, if we may assume, as seems to be the case, from the powers conferred on the city by the provisions of its charter, as well as by section 20, of article 12, of the constitution, already quoted, that the defendant company was allowed to lay its tracks upon the streets of the city, upon condition of yielding obedience to the municipal ordinances then or thereafter to be enacted, thereby entering into contractual relations with the city ; if this has been done, and the ordinance quoted has been violated by the defendant company, resulting in injury, as the petition alleges, then these questions arise : What is the result of such violation ? And what, if any, the liability of the defendant and to whom liable, and the nature and extent of its liability in consequence of such violation ? Now, if the case in hand arose upon a *statute*, and contractual relations had been entered into between

the defendant company and the city, whereby the former had engaged with the latter to perform a public duty in consideration of the benefits to be derived from laying its tracks and operating its road on the streets of the city, the authorities seem to be unanimous in expression that a breach of the public duty thus created, resulting in injury to any person, would render the defendant company liable to such person for the injury thus received.

The principle here asserted is of ancient date, and is announced in the early case of *Mayor of Lyme Regis v. Henley*, 1 Bingham, N. C. 222, citing earlier cases, where it is said that, where a matter of public and general concern is involved, "and the king, for the benefit of the public, has made a certain grant imposing certain public duties, and that grant has been accepted, we are of opinion that the public may enforce the performance of those duties by indictment, and the individuals peculiarly injured, by action." In *Goshen, etc., Turnpike Co. v. Sears*, 7 Conn. 86, it was ruled that the turnpike company, by accepting the charter of incorporation making the road, and receiving tolls of passengers, became bound to keep the road in repair ; and, where a traveler was injured by reason of the failure of the company to repair its road, he was held entitled to recover. To the same effect see *Wilson v. Susquehannah, etc.*, 21 Barb. 68, and cases cited. In *Conrad v. Ithaca*, 16 N. Y. 158, and *Hickok v. Trustees*, reported in the same volume, the principle under discussion is thus formulated by SELDEN, J.:  "That, whenever an individual or corporation, for a consideration received from the sovereign power, has become bound by agreement, either express or implied, to do certain things, such individual or corporation is liable in case of neglect to perform the agreement, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by such neglect. In all such cases, the contract made with the sovereign power is deemed to inure to

Fath v. Tower Grove & LaFayette Ry. Co.

the benefit of every individual interested in its perform-
ance." This, Judge SELDEN says, is the basis of *Hen-
ley's case,* and of the series of the English cases upon
which that case was decided. Sustaining the like view,
see *Adsit v. Brady,* 4 Hill, 430 ; *Robinson v. Cham-
berlain,* 34 N. Y. 389 ; *Fulton, etc., Co. v. Baldwin,* 37
N. Y. 648 ; *Johnson v. Belden,* 47 N. Y. 130. In *Willy
v. Mulledy,* 78 N. Y. 310, it was ruled that where, by
the charter of the city, an absolute duty is imposed
upon the owners of tenement houses to have places of
egress to the roofs, and also to have fire escapes to such
houses, this duty is for the benefit of the tenants ; and
for a breach thereof, causing damage, a tenant may
maintain an action against his landlord, EARL, J.,
remarking: "In Comyn's Digest, action upon statute
(F), it is laid down as the rule that, 'in every case,
where a statute enacts or prohibits a thing for the bene-
fit of a person, he shall have a remedy upon the same
statute for the thing enacted for his advantage, or for the
recompense of a wrong done to him contrary to the said
law.'" In the law of torts, it is said by the distinguished
author: "If the duty imposed is obviously meant to
be a duty to the public, and also to individuals, and the
penalty is made payable to the state or to an informer,
the right of an individual injured to maintain an action
on the case for a breach of the duty owing to him will
be unquestionable." Cooley on Torts, 784.

Upon these authorities if the defendant company
had gained the franchise of the use of the streets of the
city through a contract made with the state, on certain
conditions, either express or implied, and injury had
resulted to anyone by reason of the contracting com-
pany failing to comply with such conditions, it is clear
that a recovery could be had by such person, notwith-
standing that a pecuniary penalty could also be inflicted
by fine for the same breach of public duty. *Parker v.
Barnard,* 135 Mass. 116, and cases cited. In the case at
bar should not the same principle dominate as to the

contract in question and the duty assumed ?    And would not the consequences of the breach of that duty result in a like liability to a person injured by such breach as well in this instance as in those already cited ?

It seems that an affirmative answer must be returned in this case as well as in any other; for here all the constituent elements of such liability exist if the supposition with respect to the defendant company accepting the existing and future ordinances as a condition of laying its tracks and running its cars on the streets of the city be true, to-wit, the agreement, the consideration therefor, and the public duty to be performed as a consequence of such agreement, and under the terms of the constitution, and of its charter, it is not to be doubted that the municipal authorities *pro hac vice* represent the sovereign power of the state, nor that the duty thus enjoined is none the less a public duty because the area of its performance is circumscribed within the boundaries of the municipality conferring the franchises.    Sustaining this position are these authorities: *Hayes v. Railroad*, 211 U. S. 228; *Mason v. City*, 77 Ill. 533; *Siemers v. Eisen*, 54 Cal. 418; *Bott v. Pratt*, 33 Minn. 323, and cases cited.

And it would seem that the municipal authorities had plenary power to enact the ordinance in question, at least so far as to provide a penalty for its breach ; this being provided for, and the ordinance accepted by the defendant company as a condition and as a consideration for the granting of the franchise, the result of a breach of such ordinance causing injury to an individual should be that already indicated ; for it must be obvious that the ordinance in issue was for the benefit of all those who have occasion to use the streets of the city.

But it is said that "a city ordinance cannot change the common-law liability of a civil nature between private parties, nor fix a new standard of negligence for an action on the case."    This may be true if the ordinance is to be construed as having the *direct effect* of changing

Fath v. Tower Grove & LaFayette Ry. Co.

the rule of the common law. But it must be remembered that " consent of parties shall alter the form and course of the law." *Dormer's Case*, 5 Co. Rep. 40. And no obstacle is seen in the way of this case why the city should not be able, as a consideration of granting the franchise, to require an enhanced degree of care on behalf of street-car companies ; a degree of care certainly better suited to the crowded streets of cities, than the rule of ordinary care which the defendant company so strenuously invokes. Surely, there is nothing in such an ordinance, or the charter which supports it, lacking harmony with the constitution and laws of this state. It is true the ordinance may not have a greater *direct* effect than to authorize the imposition of the prescribed penalty on a defaulting company ; but the other consequences attend as inseparable incidents of a breach of duty resulting in injury to an individual for whose protection the ordinance was clearly designed. The case at bar is clearly distinguishable from that of *Heeney v. Sprague*, 11 R. I. 456, and other similar cases ; for there the principle of a liability arising from the breach of contractual relations, whether express or implied, is distinctly recognized, as well as the principle that where the duty is merely one for the benefit of the municipality or of the public at large, and not distributively to the public as composed of individuals, that there the only recovery is the statutory penalty.

Under this view the ordinance in question was clearly admissible in evidence, and, on the theory already approved, evidence should also be introduced in connection therewith so as to show the contractual relations entered into between the defendant company and the city and the breach of duty consequent thereon ; but at any rate the cause was improperly tried, inasmuch as the instructions given at the instance of the plaintiff and of the defendant were confusing and conflicting, one for the former exacting the highest degree of diligence of the defendant's driver, while the instructions for the

defendant only required the driver of the car to exercise diligence according to the common-law standard, *reasonable* or *ordinary care*.

For the reasons announced, the judgment of the St. Louis court of appeals, reversing that of the circuit court, should be affirmed, and the cause remanded to the former court to be proceeded with in conformity hereto. All concur, except BARCLAY, J.