51 629
64 364

GEORGE G. GLENVILLE, Respondent, v. THE ST. LOUIS RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, December 6, 1892.

1. Practice, Trial: SUFFICIENCY OF OBJECTIONS TO EVIDENCE. Objec] tions to evidence should be as specific as the nature of the case admits of. It may in many cases suffice to object to evidence as irrelevant, but it is in no case a sufficient specification to say that the evidence is incompetent. The general terms of objection, immaterial and impertinent, are mere epithets, and in their application to evidence have no legal meaning.

2. Justices' Courts: PLEADING: SPECIAL DAMAGES. The rule, which requires the plaintiff to plead special damages as a condition precedent to their recovery, does not apply to actions instituted before justices of the peace.

3. ——:——: CONTRIBUTORY NEGLIGENCE. The defendant is not required to make any written plea in an action for damages for his negligence, instituted before a justice of the peace; and contributory negligence on the part of the plaintiff may, therefore, be shown in such an action, although not pleaded.

4. Street Railways: CONSTRUCTION OF A MUNICIPAL ORDINANCE. An ordinance of the city of St. Louis, which was in force for more than thirty years, provided in regard to street railways that "the conductor and driver of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children either on the track or moving towards it, and, on first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible." *Held*, that this ordinance is not applicable to street railways propelled by cable, but only to street railroads propelled by horsepower.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Smith P. Galt,* for appellant.

No brief filed for respondent.

ROMBAUER, P. J.—The plaintiff's horse and wagon, while crossing the defendant's cable railroad at the intersection of two streets, were struck by the gripcar of the defendant. The horse was seriously injured and became a total loss. The wagon was broken in several parts. The plaintiff's son who drove the horse received bodily injuries, disabling him from his service to plaintiff for two weeks or more, and necessitating expenses for medical attendance. The plaintiff thereupon brought this action, and, upon its trial anew in the circuit court, recovered a verdict for $125, which, as to amount, is within the limits shown by the evidence. The defendant, appealing, complains of the rulings of the court on the evidence, and in giving and refusing instructions.

The statement, on which the case was tried, relied for recovery on the negligence of the defendant's gripman in not stopping the car seasonably to prevent the collision. The statement also set out an ordinance of the city of St. Louis, and claimed that the conduct of the gripman was in violation of said ordinance, resulting in the injuries complained of. The statement contained no allegations of loss of service.

The ordinance of the city, which the plaintiff offered in evidence, contained the following provisions bearing on the question under investigation:

"The conductor and driver of each car shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and, on first appearance of danger to such persons or vehicles, the car shall be stopped in the shortest time and space possible.

"The cars shall be entitled to the track, and any vehicle upon the track shall turn out when the car comes up, so as to leave the track unobstructed. * * * No car shall run at a greater speed than eight miles an hour."

The defendant's objections to the admission of some of the oral evidence for the plaintiff were too general to be reviewed on appeal. *Margrave. v. Ausmuss*, 51 Mo. 561, 565, 567. Objections to evidence should be as specific as the nature of the case admits of. It may in many cases suffice to object to evidence as irrelevant, because the irrelevancy of the evidence is self-apparent, but it is in no case a sufficient specification to say that the evidence is incompetent, because the reason for the claim of incompetency can always be fully stated. The general terms of objection, immaterial and impertinent, are mere epithets, and in their application to evidence have no legal meaning. We may add, however, that, as this was an action instituted before a justice of the peace, the rule which requires the plaintiff to plead special damages as a condition precedent to their recovery does not apply, and, hence, the objection that the plaintiff could not recover for the loss of his son's services, because not claimed in his statement, is untenable. The defendant's objections to evidence bearing on this claim would have been rightly overruled, even if specifically made.

When the ordinance, above recited, was offered in evidence by the plaintiff, the defendant objected to it as incompetent and immaterial. Had the defendant objected to it on the ground, that it was not shown that such contractual relation existed between the city and the defendant, as to make the latter amenable to the provisions of the ordinance, a proper question for our consideration would have arisen under the views expressed by the supreme court in *Fath v. Railroad*, 105

Mo. 537. Had the defendant objected to it on the ground that the ordinance had application to railroads only, whose cars were propelled by horsepower, while the defendant's car in question was propelled by cable operated by steam, we might review the objection. As the defendant contented itself with a general objection of incompetency, we cannot put the court into the wrong for overruling it.

The evidence on the trial was conflicting. The plaintiff's evidence tended to show that the driver drove at a slow gait close to the defendant's track, and stopped to let one north-bound train pass; that, as soon as the train passed, he drove onto the track, and the horse and wagon were immediately struck by the gripcar of another north-bound train, following the train in close proximity. Some evidence was offered, tending to show that it was *possible* to stop a gripcar in a shorter space than this car was actually stopped after the horse was discovered on the track. No satisfactory evidence was offered why the driver of the wagon could not have discovered the approaching train as soon as the gripman of that train could have discovered him, unless it be the fact that the wagon was a covered wagon, and the driver could not look out sideways but only ahead, and the further fact that the horse was ahead of the driver. The defendant's evidence tended to show that the driver drove rapidly towards the track and without stopping drove across, and that the gripman, as soon as he discovered the team, did everything in his power to stop the train, but could not avoid the collision.

The court of its own motion gave the following instruction to the jury: "If the jury believe from the evidence that the gripman, operating the car of the defendant which struck the horse of the plaintiff, saw, or, by keeping a vigilant watch for persons and vehicles

on or approaching the track of defendant, would have seen, said horse on or approaching said track, and in apparent danger of being struck by said car, in time to have enabled said *gripman* by stopping said car *in the shortest time and space possible* to have avoided injuring said horse, then the jury will find for the plaintiff. And, on the contrary, if the jury believe from the evidence that said gripman did not see, and, by keeping a vigilant watch for persons and vehicles on or approaching said track would not have seen, said horse on or approaching said track, and in apparent danger of being struck by said car, in time to have enabled said gripman by stopping said car *in the shortest time and space possible* to have avoided injuring said horse, then the jury will find in favor of defendant." (The italics are our own.)

This instruction assumes that the ordinance offered in evidence by the plaintiff was applicable to the defendant company, although the evidence conceded that the defendant's cars were propelled by a cable and steam power; that the defendant was not limited to a speed of eight miles an hour, and that the defendant's train in the very nature of things could have no *driver*. This we conceive was error.

The ordinance in question was first under consideration in *Liddy v. Railroad,* 40 Mo. 506, and it would appear to have been in force for more than thirty years. When first adopted, its provisions were the same as now, except that the maximum speed of cars was limited to six miles an hour. We are bound to take judicial notice of the fact that, at the date of the adoption of this ordinance, the motive power of street railroads consisted of horses driven by a driver. We are also bound to take judicial notice of the fact that, in recent years, the motive power has been in many cases changed to steam and electricity, and that the

maximum speed of trains has been greatly increased up to fifteen miles an hour. *Hickman v. Railroad,* 47 Mo. App. 65. In this last case we took judicial notice of the fact that these changes have imposed a greater degree of care on part of the traveling public in an attempt to cross these railways. In *Dawson v. Dawson,* 23 Mo. App. 169, we decided that words used in a statute will be construed with reference to their generally accepted meaning at the time of their passage, and [that there is no presumption that the legislature in re-enacting a statute intended that the words should have an enlarged meaning. The same rule is applicable to city ordinances.

Now while we, on the authority of *Fath v. Railroad, supra,* are bound to concede that the city had power to make the ordinance in question applicable to all street railroads, regardless of the motive power propelling its cars, subject to the limitation that such power be reasonably exercised, yet there is nothing in the record to show that it has seen fit to do so. On the contrary the retention of the word *driver* in the ordinance, and of the limitation of a maximum speed of eight miles, indicates that the city intended to leave the ordinance, as it originally was, applicable to railroads propelled by horsepower.

The defendant asked the following instruction, which was refused: "The court instructs the jury that, if they believe from the evidence that the boy driving the horse and wagon stopped near the track to let the one train pass him, and that from the point where he was he could see another train coming behind it, if he had looked, which would be in danger of colliding with the team if he drove upon the track, then the court instructs the jury that it was his bounden duty to wait in a place of safety until that train had also passed him; and, if the jury believe that he did

not so wait, but drove onto the track, whether at a slow or fast speed, and so near to the approaching train that it could not be stopped before the collision, then the court instructs the jury that his own negligence directly contributed to the accident, and their verdict must be for the defendant."

There was evidence to warrant this instruction; it states a correct proposition of law, and is more favorable to the plaintiff than a similar instruction offered by the defendant in *Hickman v. Railroad, supra*, the refusal of which was held to be error. The ground, on which we conceive this instruction was refused, was that contributory negligence was not pleaded. This was an action instituted before a justice of the peace, and the defendant was not required to make any written plea. The same reason, which leads us to hold that there was no error in receiving evidence of special damages offered by plaintiff, although not pleaded, must lead us to hold that there was error in refusing an instruction properly drawn, and supported by evidence, submitting to them the plaintiff's contributory negligence as a bar to his recovery, although contributory negligence was not pleaded. There was no evidence of wilfulness or recklessness on part of defendant's employes.

The judgment is reversed, and the cause remanded. All the judges concur.