JEREMIAH SHEEHAN, Respondent, v. THE CITIZENS' RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, December 7, 1897.

1. **Evidence :** NONSUIT. Where there was some evidence to support a verdict, a refusal to grant a nonsuit was not error.

2. ———: ORDINANCE: ADMISSIBILITY: NONPREJUDICIAL ERROR. In an action against a street railway for damage to plaintiff's carriage from a collision with defendant's cars at a crossing, an objection to the reading in evidence of an ordinance concerning the running of cars, that, to render defendant amenable it must have been shown by evidence *aliunde*, that defendant accepted its provisions, was well taken. But its admission was without prejudice to defendant, where the ordinance required a higher degree of diligence than required by the common law, and all the instructions were predicated on the right of plaintiff, at common law, to recover on the failure of the gripman to exercise ordinary care in stopping the cars.

3. **Instructions.** Instructions offered which failed to tell the jury that defendant would be liable notwithstanding the negligence of plaintiff in attempting to make the crossing, provided the gripman saw the danger in time to have avoided the accident, were misleading and properly refused.

4. ———: EVIDENCE: NEGLIGENCE: INVOLUNTARY ACTION. The court did not err in refusing to instruct the jury, that, if the driver of plaintiff's carriage could have avoided the collision, after he was on the track, by driving ahead, but instead thereof "slowed up" on the track, their verdict must be for defendant, where all the evidence tended to prove that at the point of collision the track was below the surface of the street, and in making the crossing the lurch of the vehicle caused the driver to tighten the reins, which was an involuntary act on his part, and not negligence.

*Appeal from the St. Louis City Circuit Court.*—HON.
LEROY B. VALLIANT, Judge.

AFFIRMED.

*Smith P. Galt* for appellant.

The court erred in refusing to give the jury
defendant's instruction offered in the nature of a
demurrer to the evidence. *Smith v. R'y*, 52 Mo.
App. 36.

The court erred in admitting section 1275 of the
ordinance relating to the running of street cars. *Fath v.
R'y*, 105 Mo. 549.

The employees of defendant were not obliged to
stop the car when "the plaintiff's carriage was about to
cross the track," but only when it was actually in peril
on the track. *Smith v. R'y*, *supra*.

*O. J. & R. Lee Mudd* for respondent.

There was no reversible error in admitting the
ordinance in evidence. *Robertson v. R. R.*, 84 Mo. 119;
*Goodwin v. R. R.*, 75 *Id.* 74; *Lynn v. R. R.*, *Id.* 167.

The instructions will not be discussed, but it is
submitted that the court fairly and fully declared the
law to the jury.

BIGGS, J.—The railway of the defendant extends
east and west on Easton avenue. The cars going west
pass over the northern track and those traveling east
pass over the southern track. At the time of the
occurrence hereinafter referred to, the terminus of the
line was just west of the intersection of Easton avenue
and Kings Highway. There was a loop in the track at
the western terminus, by means of which the outgoing
cars were shifted to the south track for the return trip.

There was a collision on this loop between a carriage belonging to plaintiff and a grip car on the defendant's road. The carriage was damaged and the plaintiff sues in this action therefor. He alleges that the accident was the result of the negligence of the servant of the defendant in operating the car. The answer contains a general denial and a plea of contributory negligence.

At the close of the plaintiff's evidence and also at the close of all the evidence the defendant asked that the plaintiff be nonsuited, which the court refused. This is assigned for error. The carriage EVIDENCE: non-suit. was traveling east on Easton avenue. The car was going west. They met on the loop. It is conceded that the street at that point presents an unobstructed view. The car was stopped about twenty or thirty feet east of the point where the curve began. The motorman testified that just as he received the signal from the conductor to start the car around the loop, he saw the carriage approaching; that it was being driven at a slow trot, and that the driver undertook to cross the loop in front of the car, which caused the collision. The question under this assignment is, whether there is substantial evidence that the motorman, after he discovered the perilous condition of the carriage, could have prevented the accident by resorting to the usual means of stopping the car. We unhesitatingly say that the weight of the evidence is against the plaintiff on the question. But there is some evidence to support the verdict which compels us to overrule the assignment. John P. Hannon, the only one of plaintiff's witnesses who saw the collision, testified that he was a passenger on the car; that the car stopped twenty-five or thirty feet east of the loop; that he got off the car at that point, and that when the car started to go around the loop the driver of the carriage had started to cross the track about seventy or eighty

feet in front of the car. The witness testified that he had seen cars stopped on the same curve within a distance of five or ten feet. The evidence of the defendant's superintendent was that the car could not be stopped at that point within less than thirty or forty feet. Hannon admitted that his recollection of the occurrence was very vague, and that he paid but little attention either to the carriage or car before the collision. However, his positive testimony is as above set forth. It was for the jury to determine its weight. If the carriage was seventy-five or eighty feet from the car when the driver manifested an intention to drive across the track, the motorman was guilty of negligence, for he admits that when he started the car he was looking at the carriage, and under all the testimony he could have stopped the car in half of that distance.

Hannon was permitted to testify that he had seen cars stop on the same curve within five or ten feet. The objection to this evidence is that it was not shown that the conditions were the same, that is, that the momentum of the cars was the same, and that the track was in the same condition. The presumption ought to be that the railroad track was in its usual condition. If at the time of the accident it was wet or otherwise in a condition to make it more difficult to stop the cars, the defendant ought to have shown this. As to the question of momentum, all the testimony is to the effect that it was necessary to run cars at full speed around the loop.

The court permitted the plaintiff to read in evidence section 1275 of the Revised Ordinances of the city. That portion of the ordinance which is pertinent is as follows: "The following rules and EVIDENCE: ordi- regulations concerning the running of nance: admissi-bility: nonprej-udicial error. street cars shall be binding upon every person, corporation, company or copart-

nership *taking out license* under the provisions. of this article." *Fourth.* "The conductor, motorman, gripman, driver, or any other person in charge of each car, shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving toward it, and on the first appearance of danger to such persons or vehicles, the car shall be *stopped in the shortest time and space possible.*" The objection made to the reading of the ordinance in evidence was that to render the defendant amenable it must have been shown by evidence *aliunde* that the defendant had accepted its provisions. This objection was well taken. (*Fath v. R. R.,* 105 Mo. 549). It will be observed, however that the ordinance provides for the exercise of a much higher degree of diligence than that required by the common law. In this only does the ordinance change the rules of law. The defendant could not have been prejudiced by the admission of the ordinance in evidence, for the reason that all the instructions predicated the right of plaintiff to recover on the failure of the gripman to exercise ordinary care in stopping the train, which is the common law rule.

At the instance of the defendant the court instructed substantially that if the driver of the carriage failed to look and listen for the approaching car before attempting to cross the railroad track, he was guilty of negligence. And further, that the gripman was not required to stop the car or attempt to stop it before it became apparent that the vehicle was in danger of collision with the car. The court refused the following instructions asked by defendant:

"The court instructs the jury that you are the sole judges of the credibility of the witnesses and the weight of their testimony, and in weighing the evidence and determining that credibility you should take into consideration the bias or

INSTRUCTIONS.

prejudice, if any was shown, of the witness in favor of or against either party to the suit, their manner of testifying and their opportunities at the time to see how the collision occurred, and how to accurately relate and describe the same, and all the facts and circumstances of the case, and if the jury believe under all the evidence that the collision was the direct result of the negligence of the driver of the carriage in failing to do what the court has in other instructions told you it was his duty to do, then your verdict must be for the defendant.

"The court instructs the jury that there is no liability on the part of the defendant, the railway company, to the plaintiff, and the jury must not presume any such liability or any negligence on the part of the gripman merely from the fact that there was a collision between the carriage and the grip car and the carriage was damaged; and the court further instructs you that before the plaintiff can recover in this case and you can find a verdict in his favor, plaintiff must prove by a preponderance of testimony that the collision was the direct result of the negligence of the gripman, as referred to, and defined in the other instructions; and the court further instructs you that if you believe from the evidence that the collision was the direct result of the negligence of the gripman, and you also further believe that the negligence of the driver of the carriage, as defined and referred to in the other instructions, directly contributed to the collision, then your verdict must be for the defendant, the railway company."

The foregoing instructions were misleading and hence properly refused, for the reason that they lose sight of the view that the defendant would be liable, notwithstanding the negligence of the driver in attempting to make the crossing, provided the gripman saw the danger in time to have avoided the accident.

There was evidence tending to prove that as the carriage came on the track of the railway the driver checked the speed of the horses, thereby causing the collision. On this testimony the defendant asked the court to instruct as follows:

INSTRUCTIONS: evidence: negligence: involuntary action.

"The court instructs the jury that if you believe from the evidence that the driver of the carriage could have avoided the collision after he was on the track with his team or vehicle, if he had driven ahead, but instead of that he stopped or slowed up on the track, and thereby permitted the car to strike the carriage, then your verdict must be for the defendant, the railway company."

This instruction was properly refused, for the reason that all the evidence tends to prove that in pulling on the reins the driver acted involuntarily. At the point of collision the track of the railroad is below the surface of the street. In making the crossing the lurch of the vehicle caused the driver to tighten the reins. This involuntary action on his part could not be treated as an act of negligence.

The defendant offers some objections to the plaintiff's instructions, but we think that the objections are without merit and we therefore overrule them.

The judgment of the circuit court will be affirmed. All the judges concur.