SAMUEL SCALING, Respondent, v. PULLMAN'S PALACE CAR COMPANY, Appellant.

### St. Louis Court of Appeals, December 21, 1886.

1. SLEEPING CAR COMPANIES—CARRIERS—RAILROADS.—The liability of a sleeping car company is not that of a common carrier; its liability is only for ordinary and reasonable care of the passenger and his effects while he is asleep on the car.

2. ——— INSTRUCTIONS.—In an action for a loss by theft from a passenger on a sleeping car, where the evidence is conflicting as to whether the company's servants kept proper guard, it is proper to instruct that the jury should find for the plaintiff if they find from the evidence that the goods were stolen from him through the defendant's carelessness or negligence.

3. ——— PRACTICE.—In such an action, the court may, but it is not bound to, instruct the jury as to what special acts constitute negligence which will authorize a recovery.

APPEAL from the St. Louis Circuit Court, DANIEL DILLON, Judge.

*Affirmed.*

CHARLES F. JOY, for the appellant: The defendant's instruction number one should have been given, for the reason that there is no proof tending to show that the loss resulted from the alleged negligent act. *Nolan v. Shickle*, 3 Mo. App. 300; *Ward v. Andrews,* 3 Mo.

App. 275. The plaintiff's instruction number one was erroneous and should have been refused, for the reason that it is too general, and does not state what facts, if found, will constitute negligence. *Goodwin v. Railroad*, 75 Mo. 73; *Yarnall v. Railroad*, 75 Mo. 575. The defendant's instruction number six should have been given, for the reason that the acts stated in said instruction do not constitute such negligence as will make the defendant liable. *Pullman v. Smith*, 73 Ill. 360; 16 Abb. Pr. [N. S.] 252. The defendant's instruction number seven is a perfect instruction on the case as made by the defendant, and should have been given. *Gaylord v. Pullman*, 6 Ky. Law Reporter, 279.

ROWE & MORRIS, for the respondent: Sleeping car companies are liable for property lost while under the control of the passenger upon proof of some fault or negligence on their part. *Pullman v. Gaylord*, 6 Ky. L. R. 279; *Blum v. Pullman*, 3 Cent. L. J. 592; *Palmeter v. Wagoner*, 11 Albany L. J. 149; *Woodruff v. Diehl*, 84 Ind. 483; *Stearne v. Pullman*, 21 Am. & Eng. R. Cas. 443.

LEWIS, P. J., delivered the opinion of the court.

The plaintiff sues for two hundred and forty-five dollars, the value of a gold watch, a pair of pantaloons, twenty-five dollars in money, and some smaller articles, all of which were stolen from him while he was a passenger in the defendant's sleeping car, on a trip from Waco, Texas, to St. Louis, Missouri. The testimony tended to show that the plaintiff, on retiring to a lower berth on the night of March 26, 1886, placed his watch and other articles in the pockets of his pantaloons, and then put the pantaloons under his pillow. That, at about three o'clock A. M., the plaintiff was lying with his face toward the window of the car, when he felt his head jerked back and immediately discovered that the pantaloons, with their contents, were gone. He quickly

arose and looked up and down the aisle of the car, but saw no one. His berth was near the foremost end of the car. He hurried to the rear end, where there was a closed swinging door leading to the vestibule, or wash-room. He opened this door, and found the porter in the wash room, blacking boots. The porter, on being told of the loss, went back to the plaintiff's berth, examined it, made no discovery, and then awakened the conductor, who made another examination of the berth, without result. The porter's testimony in the trial contradicted that of the plaintiff in some particulars. He declared, in the most positive terms, that the swinging door mentioned was opened back against the wall, where it was kept fastened by a catch, and that it was so kept all night, in obedience to the rules of the company; that he sat blacking boots, with his face toward the aisle, of which he had a clear view along its entire extent; that he saw the plaintiff leave his berth and approach him down the aisle; that he could not have failed to observe any person who should have been in the aisle at any time during the half hour previous, but he saw no one. Both the porter and the conductor saw some indications that the window at the plaintiff's berth had been open, but the plaintiff asserted positively that such was not the fact, and that he was habitually careful never to sleep with any window near him open. There was testimony tending to show that the theft occurred about the time when the train was leaving Fort Scott Junction, where it had stopped for a couple of minutes, and that at that place there was a platform on the same side of the car with the plaintiff's berth, upon which a person might stand and thrust his arm into the berth, if the window were open. The jury gave a verdict for the plaintiff.

The gist of the action, as developed in the petition, is negligence of the defendants and its servants, which occasioned the plaintiff's loss. The only matters of complaint brought to our attention arise upon the in-

structions given and refused. The defendant's demurrer to the evidence was properly overruled. There was evidence tending to sustain the material allegations of the petition. The court refused to give the two following instructions for the defendant :

"The jury are instructed that the fact, if found to exist, that the porter of the car, Revere, was temporarily out of sight of the sleeping berth occupied by the plaintiff, but was at that time attending to his duties in said car, and ministering to the requests of the occupants thereof, this is not such proof of negligence as will entitle the plaintiff to recover in this action."

"The jury are instructed that the fact that the plaintiff was an occupant of the sleeping car, Revere, and that while such occupant he lost by theft of some person unknown the property mentioned in his petition, is not sufficient to entitle him to recover in this case."

Both these instructions were objectionable for vagueness, and a lack of necessary completeness in their respective hypotheses. Under the first, it was possible for the jury to understand that the porter, while "attending to his duties in said car, and ministering to the requests of the occupants thereof," might have wilfully or negligently closed the swinging door and thus put himself "temporarily out of sight of the sleeping berth occupied by the plaintiff," thus making the theft possible, and that yet there would be no proof from which negligence might be inferred. The second instruction, literally interpreted by a person skilled in the use and force of words, might impart a correct proposition of law. But the average juror, not thus skilled, might be misled into the supposition that, on general principles, there can be no recovery for money stolen by an unknown person on a sleeping car. The instruction should have brought clearly into view, as adjuncts of the general proposition, the conditions of due watchfulness and care on the part of the defendant's servants.

Sleeping car companies are not held to the re-

sponsibilities of common carriers, or of inn-keepers. But there is a peculiar responsibility implied in every contract of the company with a passenger.    In *Pullman Co. v. Gardner*, 16 Am. and Eng. R. R. Cas. 324, the case is strikingly put thus :    " In the case of a sleeping car company, the great convenience and inducement held out to passengers is, that they will give them a comfortable night's rest.    They notify them they will make them pay for it, and say to them, 'you may go to sleep.'    The principal part of the arrangement is the advantage the passenger will have over the ordinary car, in that he may lie down and go to sleep.    When you have gone to sleep, of course, you can't take care of yourself.    Everybody knows that, and for that very reason the fact that the company notifies you to lie down and shut your eyes and go to sleep and thus become helpless, *it is their duty to take care of you while you do sleep;* not that they are insurers, not that they say you shall not be robbed or can not be robbed, but they will use reasonable and ordinary care to prevent people intruding upon you and picking your pockets or carrying off your clothes while you are asleep."

In that case, as in the one before us, it was shown that, under the regulations of the company, the conductor remained on guard until three o'clock, A. M., when he retired, and the porter then became a watchman for the rest of the night.    He was required to keep continuously in view the whole extent of the aisle, so as to detect any intrusions or improper conduct therein. Stowe, P. J., remarking upon the duties of the porter, said :    " If he went out of that aisle, even for a very few minutes, and during that time this robbery occurred, and the jury believe that if he had been in his place of observation, it would not and could not have occurred without detection, the company is liable, because he failed to do his duty to that extent that it allowed this robbery to be done.    It was his fault and it is visited on

the company, although they may have done every thing they thought right to get a proper man." These and similar views have been generally sustained by the American courts, and enough has been here said to indi-cate the principles on which it was proper to try the present case.

The following instruction was given for the plaintiff:

"The court instructs the jury that if they believe from the evidence that the defendant was the owner of a sleeping car running on the Missouri, Kansas and Texas Railroad, a line of railroad between Waco, Texas, and St. Louis, Missouri, and that on or about March 25, 1886, the defendant undertook to provide the plaintiff with lodging on its car for a consideration paid to it by the plaintiff, and that while the plaintiff was asleep on the car of the defendant, the plaintiff's goods and chattels were stolen from him through the carelessness and negligence of the defendant, then the jury will find for the plaintiff and against the defendant."

This instruction is objected to on the ground that it leaves the jury to determine what facts are sufficient to constitute negligence on the part of the defendant; whereas that question is always one of law, for the court. Reference is made to *Goodwin v. Railroad*, 75 Mo. 73, and *Yarnall v. Railroad*, 75 Mo. 575. In the first of these cases, there is a general remark to the effect that, in such a case as the one then under consideration the court should have declared what facts, which the evidence tended to prove, would amount to negligence, and should have told the jury that, if they found those facts, and that the injury was occasioned by such negligence, their verdict should be for the plaintiff. But it is not said in the opinion that there was error in the court's omission of these declarations, and the judgment was distinctly reversed on other points. In the other case, a similar remark is made, but it does not appear to have been made a basis for the determination of the cause. The court says: "Usually, and *especially*

*in a case like this,* it is believed to be the *better practice* for the court, by appropriate instructions applicable to the particular facts of the case in evidence and on trial, to tell the jury whether these facts, if they believe them to exist, do or do not amount to negligence or care." The remarks quoted bear such a relation to the adjudication in either case, that we can not regard them as announcing an authoritative decision in the one case or the other; especially in view of the numerous series of decisions by the same tribunal, which are utterly inconsistent with any such conclusions, stated as general rules applicable to all questions of negligence. In a case where the negligence charged consists of the violation of a positive law regulating the speed of street cars, or the like, it is manifestly the province of the court to inform the jury what facts will constitute a breach of the law, and thus evolve the resulting fact of negligence. *Karle v. Railroad,* 55 Mo. 476; approved in *Wyatt v. Railroad,* 55 Mo. 489. It is also proper for the court to declare, on suitable occasions, that no testimony has been adduced in proof of negligence, and thus to take the question away from the jury. *Boland v. Railroad,* 36 Mo. 484. But, aside from such matters as the foregoing, our supreme court has repeatedly declared that, as a rule applicable to the generality of cases, "What is reasonable skill, proper care, caution, prudence, or diligence, or what constitutes negligence, is strictly matter of fact, and can only be determined by a jury." *Boland v. Railroad,* 36 Mo. 491; *Kennedy v. Railroad,* 36 Mo. 351; *Smith v. Railroad,* 37 Mo. 287; *Callahan v. Warne,* 40 Mo. 131; *Liddy v. Railroad,* 40 Mo. 506. The present case is unquestionably within the general rule. The jury, as men having a practical acquaintance with the ordinary affairs of life, were fully competent to determine the measure and means of care, caution, and vigilance which should afford to passengers on the sleeping car a reasonable security in their persons and property. But, if there could be any doubt on this point,

an instruction given for the defendant informing the jury what facts in evidence would constitute a sufficiency of care and vigilance on the part of the defendant's servants, if proved to their satisfaction, made it impossible that the jury should fail to understand what acts or omissions would, on the other hand, constitute negligence.

All the judges concurring, the judgment will be affirmed.