7293

### CAMPBELL v. SEABOARD AIR LINE RY.

1. APPEAL.—Exception alleging error in refusal to strike case from calendar on ground that there was no indorsement on the complaint indicating the calendar and issues, not considered because the "case" does not show what the indorsement was.

2. RAILROADS—PASSENGERS—DAMAGES.—In view of the evidence warranting punitive damages it was proper to refuse request that plaintiff could only recover the cost of the conveyance from station at which she was left to her destination, although it is not clear there was any evidence tending to show plaintiff was warranted in incurring exposure of long ride on cold day without sufficient wraps.

3. IBID.—IBID.—PULLMAN COMPANY.—Where the porter of a Pullman car company awakes a passenger in a berth in his car and induces him to alight at the wrong station under representation that it was passenger's destination, the railroad company is liable for any legal damages resulting from such breach of duty.

4. IBID.—IBID.—IBID.—Where a Pullman porter puts off a passenger at the wrong station and the railroad company's agents wilfully refuse to stop the train and take him on again after discovery of mistake, the railroad company is liable.

Before WILSON, J., Bamberg, November term, 1908. Affirmed.

Action by Emma Jane and M. R. Campbell against Seaboard Air Line Railway. From judgment for plaintiffs, defendant appeals.

*Messrs. Lyles & Lyles, S. G. Mayfield, J. Aldrich Wyman* and *Edward L. Craig,* for appellant. *Mr. Craig* cites: *Pullman car company is responsible and not defendant:* 81 S. C., 326; 45 So., 675; 13 L. R. A., 216; 42 Fed., 484. *No evidence showing wilfulness:* 79 S. C., 154; 20 L. R. A., 817. *No liability for mental suffering:* 75 S. C., 362; 12 S. E., 1061; 97 S. W., 1037; 71 Ill., 391; 77 Hun., 539; 14 Fed., 396. *No damages for mental suffering if no bodily injury:* 78 S. C., 559; 81 S. C., 322.

*Messrs. J. W. Thurmond, Geo. B. Timmerman* and *J. F. Carter,* contra, cite: *Case properly docketed:* 46 S. C., 502. *Acts and declarations of Pullman conductor competent:* 22 Am. St., 461; 51 Am. St., 309; 120 N. Y., 117; 32 Am. St. R., 325; 8 Id., 538. *Case properly sent to jury:* 43 S. C., 529; 44 S. C., 315; 45 S. C., 46, 181; 46 S. C., 104; 48 S. C., 421; 50 S. C., 25; 58 S. C., 373; 60 S. C., 201. *Acts of appellant's agents were wanton:* 51 S. C., 296; 53 S. C., 210; 57 S. C., 228, 325; 60 S. C., 67; 62 S. C., 89; 69 S. C., 110.

October 2, 1909.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   The facts in this case are substantially the same as those in *Entzminger* v. *Ry.*, 79 S. C., 151, 60 S. E., 441.   The testimony on the part of the plaintiff tended to prove the following facts: Mrs. Campbell boarded the passenger train of the defendant, Seaboard Air Line Railway, on the night of 24th December, 1906, at Jacksonville, Florida, and took a berth on the Pullman sleeping car. Knowing that the train would reach Denmark, her destination in the early morning, Mrs. Campbell asked the conductor of the train, as well as of the Pullman car, to awake her in time to dress and leave the car at Denmark.   She was awakened by the porter of the Pullman car very early in the morning, while it was still dark, and was told that Denmark was the next station; and when the train stopped she was put off at Govan, a station seven miles from Denmark.   Mrs. Campbell perceived the mistake just as the train was moving off and gave the alarm to a fellow-passenger, Entzminger, who was in the same predicament. He rushed forward and cried out to the porter, standing on the steps, to stop the train.   W. A. Hays, who was acting as station agent, attempted to stop the train by signalling with his lantern; the Pullman conductor perceived the situation and tried to give the alarm by pulling the bell cord; and the Pullman porter told the conductor of the train the mistake as soon as he could get to him, when the train had gone about three-quarters of a mile.   Being thus left at Govan, Mrs. Campbell and Entzminger hired a conveyance and drove through the country to Denmark.   The day was very cold, and Mrs. Campbell was made sick by the exposure.   The action is for actual and punitive damages, resulting from her sickness and suffering.   The verdict and judgment was for the plaintiff, and defendant appeals.

On the call of the cause for trial, defendant's counsel moved to strike the cause from the calendar "on the ground

that the complaint does not contain the proper indorsement, in that the nature of the issue and the docket upon which the same should be placed is not indorsed thereon." The exception alleging error in the refusal of this motion can not be considered, for the reason that there is nothing in the record to show that the complaint was not properly indorsed.

The refusal of the Circuit Judge to withdraw from the jury the cause of action for punitive damages, by ordering a nonsuit or directing a verdict, was in accordance with the opinion and judgment of this Court in *Entzminger* v. *Ry. Co., supra,* on similar facts, and the point needs no further consideration. It is important to observe, however, that in that case the liability of the defendant for compensatory damages was admitted.

There was no error in refusing to instruct the jury that the recovery must be limited to two dollars, the sum paid by the plaintiff for the conveyance from Govan to Denmark. It is true the plaintiff would not be entitled to recover damages for the suffering resulting from the drive through the country, if by the exercise of due care she could have reached her destination without the exposure. *Carter* v. *Ry. Co.,* 75 S. C., 355, 55 S. E., 771; *Jones* v. *Tel. Co.,* 75 S. C., 208, 55 S. E., 318; *Key* v. *Tel. Co.,* 76 S. C., 301, 56 S. E., 962; *Berley* v. *R. R. Co.,* 83 S. C., 411; Sherman & Redfield on Negligence, sec. 741; *Indianapolis etc. R. R.* v. *Birney,* 71 Ill., 391; *Georgia R. R. etc.* v. *Eskew* (Ga.), 12 S. E., 1061; *International etc. R. R.* v. *Addison* (Tex.), 97 S. W., 1037. Had the defendant requested a charge to that effect, it would have been error to refuse it. Indeed, it is by no means clear that there was any evidence tending to show that the plaintiff was warranted in incurring the exposure of the long ride on a bitter cold day, without sufficient wraps. There was a lodging house at Govan, where she might have waited for the next train, or at least until she could have procured wraps to

protect her from the cold. But if it be assumed that the exposure was unnecessary and taken without due care, in view of the admission of damages to the amount of two dollars, and of the evidence warranting a recovery for punitive damages, the Circuit Judge could not properly instruct the jury, as requested by defendant's counsel, that the recovery must be limited to two dollars. The plaintiff, under the evidence, had a right to have submitted to the jury the question of punitive damages in connection with the admitted damages.

The remaining question made by the objections to the testimony, by motion for nonsuit, and by the request to charge, is whether the Pullman company was solely liable for all damages suffered by the plaintiff, to the exemption of the defendant railway company. A railroad company is not relieved of any of the duties which it owes to a passenger by reason of the passenger making a separate contract with a sleeping car company for special accommodations. The sleeping car company may, by its contract, impose upon itself also some of the obligations that the railroad company undertakes in its contract of carriage; but that does not release the railroad company. The only effect of such a contract is to give the passenger the benefit of the care and protection and liability of both companies.

There is, it is true, at least one duty ordinarily undertaken by sleeping car companies, not embraced in the railroad's usual contract of carriage—the duty of providing a sleeping berth. Accordingly, in *Taber* v. *Ry. Co.*, 81 S. C., 317, 326, 62 S. E., 311, it was held that a railroad company, under its ordinary contract of carriage, is not liable for the failure of the porter of a sleeping car company to make down a berth for which the passenger had paid the sleeping car company. The Court says: "Conceding that the porter was negligent, or even wilfully disregardful of plaintiff's request in this matter, the defendant company is not liable,

in the absence of evidence connecting it with the special contract of the Pullman Company.    The delict, if any, was a breach of duty by the Pullman company, since it appertained peculiarly to the contract of that company to furnish berth accommodations as distinguished from the defendant's contract of safe and comfortable transportation."    This case is sound, because it rests upon a very broad and obvious distinction as to a special comfort for the passenger, furnished by a separate company, which the fare for carriage paid to the railroad company does not cover.    But there is no ground whatever for the position that a passenger by going into a Pullman car and taking a berth releases the railroad company from any of its duties as a carrier.    The railroad company carries Pullman cars in connection with its own, and in this, and in other ways, shows that so far from objecting to their use it means to encourage and invite its passengers to use them.    When, in pursuance of such invitation, the passenger takes the Pullman car, he is still entitled to the service of the railroad employees in all matters which relate to his safe and comfortable transportation to his destination.    Obviously, the railroad company can not lawfully withdraw its own employees from this service and substitute and rely upon the employees of another company to perform the service, as persons acting apart from itself.    On the contrary, it is quite plain that when it relies on such persons to perform its own public duties it adopts them as its agents, and is responsible for their failure to perform the service to which the passenger is entitled as a part of his contract of carriage.    Hence, with respect to those matters embraced in the contract of carriage, which the railroad company depends upon the employees of the Pullman company to perform, such employees are the agents of the railroad company.    This conclusion is in accord with the current of authority. *Pennsylvania Co.* v. *Roy,* 102 U. S., 451, 26 L. Ed., 141; *Dwinelle* v. *Ry.* (N. Y.), 17 Am. St., 611; *Airey* v. *Pull-*

*man Co.* (La.), 23 So., 512; *Louisville etc. R. R.* v. *Ray* (Tenn.), 46 S. W., 554; *Pullman Co.* v. *Hoyle* (Tex.), 115 S. W., 315; *L. & N. R. R. Co.* v. *Church* (Ala.), 46 So., 457; *Calhoun* v. *Pullman Co.* (Tenn.), 159 Fed., 357; *Pullman Co.* v. *Lutz* (Ala.), 45 So., 675.

One of the duties embraced in the contract of carriage is to give the passenger reasonable notice of arrival at his destination. *Ford* v. *Southern Railway*, 75 S. C., 286, 55 S. E., 448. Ordinarily this is sufficiently done by calling out the stations as the train approaches them. But where a passenger takes a berth to sleep, with the knowledge and consent of the carrier, it would be absurd to hold a call in the passenger coach reasonable notice to him. In such case the railroad company, when it relies on the conductor and porter of the sleeping car to give reasonable notice, adopts them as its agents and is liable for their default. It follows that when the porter of the Pullman car assured the plaintiff that she had arrived at Denmark, her destination, and induced her to leave the car at Govan, the railroad company was responsible for any legal damages which resulted from this breach of duty to the plaintiff.

This conclusion disposes of the point under discussion, but there is another view equally conclusive. The plaintiff's case depended mainly not on the mere mistake of having the plaintiff to leave the car at Govan, but on the evidence tending to show a wilful failure to stop the train and allow her to get on again after the discovery of the mistake. As the train was in the control of the agents of the defendant, for any breach of duty in this respect the defendant was liable. For this reason, if there was no other, the motions for a nonsuit and for the direction of a verdict for defendant were properly refused.

There is no foundation for the seventh exception. The Circuit Judge explicitly charged that there could be no recovery for mental suffering unaccompanied by bodily pain or injury.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE HYDRICK *was disqualified in this case.*