# ROBINSON v. SOUTHERN R. CO.*

CARRIERS; SLEEPING CAR; EVIDENCE; PRESUMPTIONS; RES IPSA LOQUITUR.

1. That a pocketbook and money were stolen from a passenger's coat in
   a sleeping car berth, and not lost by the passenger between the
   berth and the toilet room, is established prima facie by unchallenged
   testimony that papers which had been in the pocketbook in the coat
   were found on the shelf in the berth; although the loss of the
   pocketbook from the coat was not discovered until the passenger
   had reached the toilet room.

2. A sleeping car company is not an insurer of the personal property be-
   longing to its passengers, but is required to exercise reasonable care
   for the protection of its guests.

3. The degree of diligence required of a sleeping car company for the
   protection of the personal effects of its passengers varies, being
   greater at night, when the passenger is sleeping, than in the day-
   time, when the passenger is charged with the duty of exercising
   reasonable diligence for the protection of his own possessions.

4. Neither a sleeping car company nor a railroad company is liable, in
   the absence of negligence, for the value of the personal effects of a
   passenger, stolen from his berth while he is sleeping.

5. It is the duty of a sleeping car company to keep a constant and ac-
   tive watch in the aisles of its cars during the hours when its pas-
   sengers are asleep, and failing to do so, is liable for the theft of
   property from a passenger's berth then occurring.

6. The liability of the railroad company and the sleeping car company
   for the theft from a berth of the personal effects of a passenger, where
   the loss is attributable to a failure to maintain a constant watch
   while the passengers are sleeping, is joint and several, since both
   are under the same duty towards the passenger as regards care
   and diligence.

---

*Carriers–Sleeping Car Company.—Upon the question of the duty of a
sleeping car company as to baggage or personal effects of passengers, see
notes to Mann-Boudoir Car Co. v. Dupre, 21 L.R.A. 289; Pullman Co. v.
Schaffner, 9 L.R.A.(N.S.) 407; and Myers v. Pullman Co. 41 L.R.A.(N.S.)
799.

7. A presumption of negligence upon the part of the sleeping car and train employees arises from the undetected theft at night from a sleeping car berth of the personal effects of a passenger, since the jury may infer that the theft would not have occurred without detection had the employees maintained the constant watch which the law requires of them.

8. The presumption of negligence upon the part of sleeping car and train employees arising from the undetected theft at night from a sleeping car berth of the personal effects of a passenger, if unrebutted, is sufficient to warrant a recovery by the passenger of the value of the stolen articles from the sleeping car company and the railroad company.

No. 2494. Submitted May 8, 1913. Decided June 2, 1913.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action against a sleeping car company and a railroad company to recover for the loss of money by alleged theft while the plaintiff was a passenger.          *Reversed.*

The COURT in the opinion stated the facts as follows:

Appellant, Leigh Robinson, plaintiff below, was a passenger on a Pullman sleeping car attached to a train of the Southern Railway Company, running between Ashville, North Carolina, and the city of Washington. Plaintiff alleges that, while he was occupying a berth in the sleeping car, his pocketbook, containing not less than $40, was stolen. This suit was brought against defendant companies, the Southern Railway Company and the Pullman Company, for the value of the property lost.

The only evidence in the case is plaintiff's testimony. The material facts detailed by him are that, before retiring, about midnight, he went to the toilet room in the car, where he observed the Pullman porter blacking boots; that he returned to the berth, and, before retiring, rolled up his vest containing his watch, rolled up his coat containing his pocketbook, and laid them on the shelf provided in the berth for that purpose; that he was the first passenger in the car to arise in the morn-

ing; that he either put his coat and vest on before going to the toilet room, or carried them in his hand; that when he reached the toilet room he looked for his watch, and discovered that it was not in his vest, and, upon examination, discovered that his pocketbook and money were also missing, and that he returned to the berth, where he found the watch lying on the shelf, also some papers that were in the pocketbook, but the pocketbook and money could not be found. From a verdict and judgment in favor of defendants the case is here on appeal.

*Mr. Fulton Lewis* for the appellant.

*Mr. H. Prescott Gatly, Mr. Barry Mohun, Mr. George E. Hamilton, Mr. John W. Yerkes,* and *Mr. John J. Hamilton* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Plaintiff's unchallenged testimony furnishes prima facie evidence that the pocketbook and money were stolen from the berth while he was asleep. Counsel for the Pullman Company indulged in considerable speculation, both at bar and in brief, to the effect that the pocketbook might have been dropped in the car between the berth and the toilet room, but the finding in the berth of the papers, which had been extracted from the pocketbook, forbids this presumption.

This decision, we think, can be turned upon the liability of defendants for the property alleged to have been stolen from the berth while plaintiff was asleep. The evidence is not sufficient to raise even a presumption of contributory negligence on the part of plaintiff. The whole case must therefore turn upon the question of defendants' general liability under circumstances of this kind, and whether the evidence is sufficient to create a presumption that they were guilty of negligence.

A sleeping car company is not an insurer of the personal property belonging to its passengers, but it is required at all times to exercise reasonable care for the protection of the prop-

erty of its guests.  The duty thus imposed varies with the circumstances.  The degree of vigilance required is greater at night when the passenger is sleeping, than in the daytime, when the passenger is charged with the duty of exercising reasonable diligence for the protection of his own possessions.  The degree of care imposed is not absolute, as in the case of an innkeeper or common carrier of goods; hence, it follows that to render a railroad company or a sleeping car company liable for the value of the personal effects of a passenger, stolen from his berth while he is sleeping, it must appear that the company was guilty of negligence.  When the Pullman Company furnished plaintiff a berth in which to sleep for the night, it impliedly agreed to watch over him while he slept, and to protect his property from theft by unauthorized intruders or by occupants of the car.  *Woodruff Sleeping & Parlor Coach Co.* v. *Diehl,* 84 Ind. 474, 43 Am. Rep. 102.

The duty which a sleeping car company owes to a passenger to protect his person and property while the passenger is asleep in his berth is well expressed in the leading case of *Carpenter* v. *New York, N. H. & H. R. Co.* 124 N. Y. 53, 11 L.R.A. 759, 21 Am. St. Rep. 644, 26 N. E. 277, as follows: "A corporation engaged in running sleeping coaches with sections separated from the aisle only by curtains is bound to have an employee charged with the duty of carefully and continually watching the interior of the car while berths are occupied by sleepers. *Pullman Car Co.* v. *Gardner,* 3 Penn. p. 78.  These cars are used by both sexes, of all ages, by the experienced and inexperienced, by the honest and dishonest, which is understood by the carriers, and though such companies are not insurers, they must exercise vigilance to protect their sleeping customers from robbery.  A traveler who pays for a berth is invited and has the right to sleep; and both parties to the contract know that he is to become powerless to defend his property from thieves, or his person from insult, and the company is bound to use a degree of care commensurate with the danger to which passengers are exposed.  Considering the compensation received for such services and the hazards to which unguarded and sleep-

ing travelers are exposed, the rule of diligence above declared is not too onerous."

We have not overlooked the conflict in the decisions of the courts as to the degree of care required of a sleeping car company to properly protect the effects of a sleeping passenger. The strict rule, which we think is the proper one to be applied to cases of this kind, and which is supported by the weight of authority, imposes upon the company the duty of keeping a constant and active watch in the aisles of its cars during the hours when its passengers are asleep, and, failing to do so, it, will be liable for the theft of property from a passenger's berth. *Hill* v. *Pullman Co.* 188 Fed. 497; *Pullman Palace Parlor Car Co.* v. *Adams,* 120 Ala. 581, 45 L.R.A. 767, 74 Am. St. Rep. 53, 24 So. 921; *Pullman Co.* v. *Schaffner,* 126 Ga. 609,. 9 L.R.A.(N.S.) 407, 55 S. E. 933.

In the other class of cases the duty is imposed upon a sleeping car company of keeping a reasonable watch over the safety of its sleeping passengers and their effects. In the note to *Calder* v. *Southern R. Co.* Ann. Cas. 1913 A, 894, the distinction is stated as follows: "This difference in the statement of the two rules, one requiring a constant watch and the other a reasonable watch, may be explained by the fact that in most, if not all, of the cases stating the latter rule, a more stringent statement was not required in order to render the sleeping car company liable for the loss complained of." This rule of vigilance imposed upon the employees in charge of a sleeping car measures the duty defendants owed to plaintiff, and for failure to perform it, they should be held liable. *Blum* v. *Southern Pullman Palace Car Co.* 1 Flipp. 500, Fed. Cas. No. 1,574.

The same liability has been imposed upon railroad companies as upon sleeping car companies for the theft of property belonging to passengers in sleeping cars used for the accommodation of passengers on their trains. Referring to such liability, Chief Justice Gray, in *Kinsley* v. *Lake Shore & M. S. R. Co.* 125 Mass. 54, 28 Am. Rep. 200, said: "Although a railroad corporation is not responsible as a common carrier for an article of personal baggage kept by a passenger exclusive-

ly within his own control, it is liable for the loss of such an article by the negligence of the corporation or its agents or servants, and without fault of the passenger." In that case the baggage of a passenger on a sleeping car was lost through the negligence of the employees of the sleeping car company.

In cases of this sort, the liability of the railroad company and the Pullman Company is both joint and several. This rule of liability is based upon sound principles of public policy. It will not do to say that a passenger who takes a berth in a Pullman car releases the railroad company from any of its duties as a carrier. The Pullman car forms part of the railroad company's train. The railroad company requires the passenger to purchase a first-class ticket,—the highest and most expensive contract,—as a condition precedent of being permitted to avail himself of the accommodation of the sleeping car. The railroad company is required, therefore, to exercise reasonable care for the protection of the effects of its passengers in the daytime and those occupying day coaches, and, like the Pullman Company, it is obliged to exercise constant watchfulness over the passenger through the night while sleeping in his berth. A passenger is there by the joint invitation of the two companies, and it will not do to permit one to shift its responsibility to the other, or to indulge in technical distinctions as to their liability. As the court said in *Campbell* v. *Seaboard Air Line R. Co.* 83 S. C. 448, 23 L.R.A.(N.S.) 1056, 137 Am. St. Rep. 824, 65 S. E. 628: "When, in pursuance of such invitation, the passenger takes the Pullman car, he is still entitled to the service of the railroad employees in all matters which relate to his safe and comfortable transportation to his destination. Obviously, the railroad company cannot lawfully withdraw its own employees from this service and substitute and rely upon the employees of another company to perform the service, as persons acting apart from itself. On the contrary, it is quite plain that when it relies on such persons to perform its own public duties, it adopts them as its agents, and is responsible for their failure to perform the service to which the passenger is entitled as a part of his contract of carriage. "

Under this rule of liability, it has been held that the sleeping car company and its employees engaged in the operation of its cars are in law the servants and employees of the railroad company. In *Pennsylvania Co. v. Roy,* 102 U. S. 451, 26 L. ed. 141, the court said: "The law will conclusively presume that the conductor and porter, assigned by the Pullman Palace Car Company to the control of the interior arrangements of the sleeping car in which Roy was riding when injured, exercised such control with the assent of the railroad company. For the purposes of the contract under which the railroad company undertook to carry Roy over its line, and, in view of its obligation to use only cars that were adequate for safe conveyance, the sleeping car company, its conductor and porter, were, in law, the servants and employees of the railroad company. Their negligence, or the negligence of either of them, as to any matters involving the safety or security of passengers while being conveyed, was the negligence of the railroad company. The law will not permit a railroad company, engaged in the business of carrying persons for hire, through any device or arrangement with a sleeping car company whose cars are used by the railroad company, and constitute a part of its train, to evade the duty of providing proper means for the safe conveyance of those whom it has agreed to convey."

The present case belongs to that general class of cases where a presumption of negligence may arise from the mere happening of the event, when the explanation of the cause, if there be one, is peculiarly within the knowledge of the defendant. As was said by Mr. Justice Pitney in *Sweeney* v. *Erving,* 228 U. S. 233, 57 L. ed. —, 33 Sup. Ct. Rep. 416: "It is recognized that there is a class of cases where the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed by the party charged with care in the premises, the thing that happened amiss would not have happened. In such cases it is said, *res ipsa loquitur,* the thing speaks for itself; that is to say, if there is nothing to explain or rebut the inference that arises from the way in which the thing happened, it may fairly be found to have been occasioned by negligence."

The rule as applied to a railroad company or sleeping car company in a case where the personal effects of a passenger had been stolen from his berth in a sleeping car is stated in *Bevis* v. *Baltimore & O. R. Co.* 26 Mo. App. 19: "There is another cogent reason for holding that evidence of a larceny, under such circumstances, is to be regarded as a prima facie case. . . . Applying that principle [*res ipsa loquitur*] to the plaintiff's evidence in the present case, it seems that the jury would be authorized to infer that the theft of his scarf pin and money would not, according to ordinary human experience, have probably taken place without detection, if the defendant's servants had been in the exercise of that reasonable care in keeping watch while the plaintiff slept, which, under the recent decision of this court in *Scaling* v. *Pullman's Palace Car Co.* 24 Mo. App. 29, and other cases there cited, the law required of the defendant."

The presumption thus created is a legal one, arising from the evidence which impels its application. When such a presumption arises, an obligation is imposed upon the defendant of overcoming it by competent evidence. This does not mean that the general burden of proof shifts to the defendant, for it does not; or that the presumption creates such a prima facie case as would justify the direction of a verdict. This legal presumption might arise in a case where the plaintiff's evidence contains facts tending to rebut the legal presumption, or from which such an inference could be drawn. In such a case, in the absence of testimony on the part of defendant, an issue is presented for the jury upon the plaintiff's evidence alone. But in a case like this, where there is a conclusive legal presumption of defendant's negligence, created from the evidence of plaintiff, not rebutted, that the pocketbook and money were stolen from the berth while he was sleeping, when the duty was imposed upon defendants to exercise that degree of care and diligence imposed upon them to prevent the theft, the prima facie evidence of negligence is sufficiently established to impose upon defendants the burden of rebutting that presumption by showing that the theft did not occur as a result of their negli-

gence, and a failure to so rebut the presumption would, if the jury believe that the pocketbook and money were in fact stolen, entitle plaintiff to recover.

It is unnecessary to consider the assignments of error, since the case was submitted to the jury upon a total misapprehension of the law applicable to such cases. The instructions given by the court and at the request of counsel for defendants were substantially to the effect that the defendants were only required to exercise reasonable care for the protection of the property of the plaintiff, and that "negligence cannot be presumed or inferred from the mere fact that the pocketbook was lost or stolen."

The judgment is reversed, with costs, and the cause remanded with instructions to grant a new trial.

*Reversed and remanded.*

A motion for a rehearing was overruled October 7, 1913.