## 12196

### MIXSON v. SOUTHERN RWY. CO. *ET AL.*

#### (138 S. E., 45)

1. CARRIERS—PULLMAN COMPANY IS PRIMARILY AND RAILWAY COMPANY SECONDARILY LIABLE FOR INJURIES RESULTING FROM FORMER'S NEGLIGENCE WHEN ACTING AS AGENT FOR RAILROAD.—Injuries resulting from negligence of Pullman Company while acting as agent for railway Company create liability against both companies, primarily against the Pullman Company and secondarily against the railway company.

2. JUDGMENT—VERDICT AGAINST PULLMAN COMPANY ACTING AS AGENT OF RAILROAD HELD TO AUTHORIZE JUDGMENT AGAINST BOTH COMPANIES IN VIEW OF INSTRUCTIONS.—In action against Pullman Company and railroad for injuries, verdict finding for plaintiff against Pullman Company acting as agent of railway company *held* to authorized judgments agains both Pullman Company and railroad, in view of instructions relative to several liabilities in case injury resulted from negligence of Pullman Company as agent of railroad.

3. CARRIERS—NEGLIGENCE OF PULLMAN COMPANY EMPLOYED AS CAUSE OF INJURY TO PASSENGER ATTEMPTING TO ALIGHT HELD FOR JURY.—In action against Pullman Company and railway company for injuries to passenger on Pullman car when attempting to alight, evidence of negligence on part of employees of Pullman Company *held* sufficient to require submission of case to jury.

Before WHALEY, J., County Court, Richland, January, 1925.  Affirmed.

Action by Ella W. Mixson against the Southern Railway Company and another.  Judgment for plaintiff, and defendants appeal.  Affirmed.

The order of the County Judge directed to be reported is as follows:

#### Order

"This case was heard before me and a jury on the 29th day of January, 1925.  After request the Court instructed the jury fully as to the form of its verdict.  A reading of the charge and the request will more fully show the nature and extent of the instructions.  After deliberation the jury ren-

---

Note: As to liability of railroad company for acts of employee of sleeping or Pullman car company toward passengers, see annotation in 23 L. R. A. (N. S.), 1056; 4 R. C. L., 1179; 1 R. C. L. Supp., 1288; 5 R. C. L. Supp., 268.

dered the following verdict: 'We find for the plaintiff the sum of five hundred dollars ($500.00) against the Pullman Company, acting as agent of the Southern Railway Company, S. O. Goodall, January 29, 1925.'

"Thereafter the plaintiff gave notice of a motion to both defendants setting forth that on the 31st day of March the verdict would be entered up under instructions from the Court in the manner required by law. Thereafter each defendant gave notice to both plaintiff and the other defendant that it would require the verdict to be entered against the other defendant alone. The matter was heard and a motion was made at the hearing by the defendant Pullman Company that the verdict be entered up against the Southern Railway Company alone, and a motion was made by the Southern Railway Company that the verdict be entered up against the Pullman Company alone. The matter was argued fully before me by the attorney for the defendant Southern Railway Company, the attorney for the defendant Pullman Company, and the attorney for the plaintiff, on March 31, 1925.

"A careful reading of the charge in the light of the evidence adduced in the case tending to show in what matters the Pullman Company undertook to and did act on behalf of the Southern Railway Company, the carrier, leaves no doubt but that the jury intended the effect of its finding to be a liability on the part of the carrier, Southern Railway Company, and its agent, the Pullman Company.

"It found an omission of the duty on the part of the agent, the Pullman Company, who was acting at the time for its principal, the Southern Railway Company. Under the law as given to them and in the light of the issues as presented to them in the testimony and argument of counsel, their finding, which is special rather than general, makes both defendants liable to the plaintiff, and I so hold.

"As between the two defendants, the Pullman Company and the Southern Railway Company, in the opinion of the Court the effect of the verdict is to hold the Pullman Com-

pany primarily liable and the Southern Railway Company secondarily liable, but this holding is not intended, nor does it in the slightest affect the rights of the plaintiff to her verdict as against both defendants.

"It is therefore ordered that the plaintiff do forthwith have leave to enter up her judgment against both defendants in accordance with law."

*Mr. Douglas McKay,* for Pullman Company, appellant, cites: *Test of proximate cause:* 122 S. C., 17; 115 S. C., 177; 13 A. L. R., 1268; 94 U. S., 469; 24 L. Ed., 256, 259; 42 S. E., 405; 120 Atl., 291; 65 Pac., 379. *Carriers not liable for unforeseen accidents due to mistaken impression of passengers:* 2 Hutch. on Carriers, Sec. 1122. *Intervention of independent causes broke connection between negligence alleged against Pullman Co. and the injury:* 108 S. C., 516; 79 S. C., 164; 109 S. C., 119; 95 S. E., 834; 1 Strob., 525. *Failure to announce station not proximate cause of injury:* 268 S. W., 844; 123 S. E., 327; 43 So., 775; 54 So., 836; 21 So., 163; 77 S. W., 100; 52 Atl., 369; 185 S. W., 969; 187 N. W., 510; 213 U. S., 1; 53 L. Ed., 671; 233 Fed., 35. *Distinction between contract of Railroad Company and contract of Pullman Company:* 83 S. C., 452; 81 S. C., 317. *Pullman Company held to exercise of ordinary care only:* 42 Fed., 484; 5 A. S. R., 31–34; 25 R. C. L., Sec. 27, p. 41; 2 Hutch. on Carriers, Sec. 1130 (3rd ed.); 269 Fed., 231; 12 A. L. R., 1364; 94 S. W., 671; 149 Fed., 546; 211 Fed., 391; 257 S. W., 686; 92 Fed., 824; 74 Fed., 499; 52 Fed., 262; 2 Fed. (2nd), 540; 203 Fed., 1017; 32 S. E., 923; 43 S. W., 22. *Defendants in pari delicto; law does not allow indemnity from one to the other:* 196 U. S., 217; 49 L. Ed., 453. *Cases distinguished:* 128 S. E., 504; Hutch. on Carriers, Sec. 1145; 161 U. S., 316; 40 L. Ed., 712; 34 Am. Dec., 33; 88 N. E., 794; 40 L. R. A. (N. S.), 1147; Id., 1153; 115 S. W., 315; 130 S. W., 722; 91 S. W., 841. *Both defendants concurrently at fault; no verdict against Pullman Company*

*should have been found:* 204 Fed., 590; 71 S. E., 1076; 117 N. E., 1074; 211 Pac., 761; 173 N. W., 382; 224 S. W., 179; 105 S. E., 394; 281 S. W., 503.

*Mr. Frank G. Tompkins,* for Southern Railway, appellant and respondent, cites: *Proper for Court to adjudicate question of primary and secondary liability:* 96 S. C., 329. *Duties of Pullman Co.:* 81 S. C., 317. *Jury had right to make special finding:* Sec. 542, Vol. 1, Code, 1922; 38 Cyc., 1870. *Where special finding followed instead of preceded finding of general verdict; not a matter of prejudice to defendant:* 88 S. C., 569. *Liability of agent:* 72 S. C., 465; 109 S. C., 147; 106 S. C., 20; 129 S. C., 165. *Same, for tortious acts for which principal could also be held:* 39 C. J., 1366; 20 A. L. R., 139; 25 L. R. A. (N. S.), 351; 2 C. J., 824–5, 828. *Failure to except at time of rendering verdict lost such right:* 116 S. C., 319; 113 S. C., 151.

*Messrs. C. N. Sapp* and *C. T. Graydon,* for respondent.

May 3, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

I concur in the opinion of Mr. Justice Cothran, in this cause, in so far as he holds that the judgment should be affirmed as to the defendant Pullman Company. I do not agree with his conclusion that there should be a reversal as to the judgment against the defendant Southern Railway Company. In my opinion, the order of the County Judge, Hon. M. S. Whaley, which will be reported, should stand, and the plaintiff should be allowed to enter up her judgment in accordance with the terms of that order. I shall state, very briefly, the reasons for my view. The matter appears to me to be so plain and simple that I deem it unnecessary to say much in support of my view.

As stated by Mr. Justice Cothran, the plaintiff sued Southern Railway Company and the Pullman Company for injuries and damages "caused by the joint, concurrent, sev-

eral, and individual acts of negligence, carelessness, recklessness, willfulness, and wantonness on the part of the defendants, both or either of them, their agents and servants. * * *"

It was admitted by all the parties to the action that the Pullman Company was, in certain respects, the agent of Southern Railway Company at the time of the injuries alleged to have been received by the plaintiff.

Clearly, under the law, and so much is conceded in Mr. Justice Cothran's opinion, if the plaintiff's injuries were occasioned by any act of negligence of the Pullman Company while it was acting for its principal, Southern Railway Company, then both companies were liable therefor, the Pullman Company primarily and Southern Railway Company secondarily. There was some proof that the Pullman Company failed in the performance of its own obligations to the plaintiff, and that it also was negligent in the discharge of its duties in its capacity as agent of the railway company. The County Judge refused to grant motions for directed verdict made by both defendants, and this action on his part is approved in the opinion of Mr. Justice Cothran.

To my mind, the charge of the County Judge was clear as to the several liabilities of the two defendants. The jury was instructed by him, at the request of the parties, to the effect that if the Pullman Company, as agent of the railway company, was guilty of negligence, that both companies thereupon became liable to the plaintiff. The jury was directed that in the event they found that the plaintiff's injuries were caused by the delict of the Pullman Company, as agent of the railway company, they should so express their finding by a special verdict. The verdict was:

"We find for the plaintiff the sum of five hundred ($500.00) dollars, against the Pullman Company, acting as agent of the Southern Railway Company."

Under the instructions given by the presiding Judge, from which there is no appeal, the jury decided that the plaintiff was entitled to receive as damages the sum of $500. They said that this money should come from the Pullman Company as the agent of the Southern Railway Company. Evidently, the jury understood from the clear instructions of the trial Judge that if the agent was guilty of the delict, the principal was responsible therefor. If the jury had intended to find against the Pullman Company alone, certainly, the words, "acting as agent of the Southern Railway Company," would not have been inserted in the verdict. If the intention had been to find against the railway company alone, there would have been no reference to the Pullman Company in the verdict. The very fact that both companies were specifically named in the verdict showed that it was the intention of the jury to give a finding in favor of the plaintiff against both the defendants. In plain English, the jury said that the Pullman Company was responsible for the damages received by the plaintiff. They further said that the Southern Railway Company was also responsible, because at the time the injuries occurred the Pullman Company was acting as agent of the railway company.

The judgment of the County Court and the order of Judge Whaley should be affirmed in all respects.

This being the judgment of a majority of the Court, it is so ordered that judgment below be affirmed *in toto.*

MR. CHIEF JUSTICE WATTS and MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.

MR. JUTICE COTHRAN (dissenting) : Action for $3,000 damages, on account of personal injuries alleged to have been sustained by the plaintiff, while a passenger on a train of the defendant Southern Railway Company, but riding in a car of the defendant Pullman Company under a contract with that company, from Columbia to Union, on October 22, 1923.

The plaintiff alleges that she boarded the train in Columbia with a railroad ticket to Union and a Pullman ticket entitling her to a seat for the journey; that when the train stopped at Union the station was not announced; that after a short delay she ascertained that she had reached her distination; that she went to both front and rear doors of the Pullman car in an effort to alight, but found the vestibule doors at each end locked; that with the assistance of a fellow passenger she then hurried forward through five passenger coaches, seeking an exit, but found all side doors locked, until she reached the front end of the fifth car, which was open; that as she attempted to alight without the assistance of a stool or the help of any of the employees on the train, a violent and sudden forward movement of the train threw her to the ground, inflicting the injuries of which she complains. The complaint specifies the particulars in which the defendants are alleged to have been negligent, in the eight paragraph, as follows: "That the injury and damage to the plaintiff as aforesaid was caused by the joint, concurrent, several, and individual acts of negligence, carelessness, recklessness, willfulness, and wantonness on the part of the defendants, both or either of them, their agents and servants," in the following particulars, to wit:

"(a) In failing to notify the plaintiff of her arrival at her station as it was their duty to do.

"(b) In failing to have the door of the car in which plaintiff was riding open so that plaintiff could alight.

"(c) In failing to give to the plaintiff, an aged lady, proper assistance in alighting from said train, as it was their duty to do.

"(d) In failing to provide a stool or other assistance for plaintiff to alight at said door that was open.

"(e) In failing to have some one at said open door to assist the plaintiff in alighting from said train safely.

"(f) In causing said train to start suddenly and violently forward, without any warning, as plaintiff was alighting at

said time and place, all of which was known or should have been known to the defendants.

"(g) In failing to furnish plaintiff with a safe passage from Columbia to Union, S. C., her destination, and in failing to transport plaintiff safely.

"(h) In throwing the plaintiff suddenly and violently forward while she was a passenger on said train by starting said engine suddenly forward.

"(i) In injuring the plaintiff through the instrumentality of the defendants while plaintiff was a lawful and legal passenger upon the train and cars of the. defendants."

The defendants answered separately denying the material allegations of the complaint.

The case was tried before his Honor, County Judge Whaley, in January, 1925.

The plaintiff offered evidence which tended to sustain the allegations of the complaint and the defendants' evidence contradicting it. At the close of the evidence, each defendant made a motion for a directed verdict, the Pullman Company upon the ground that there was not sufficient evidence of actionable negligence on its part which contributed as a proximate cause of the injury complained of, and the Southern Railway Company upon the following grounds:

"(1) No reasonable inference can be drawn from the testimony except that there was no violent or unusual movement of the train which acted as a proximate cause of the plaintiff's injury.

"(2) That no notice to the train conductor and other employees and agents who were in charge of the train proper was given that the plaintiff needed any assistance or that she was going to get off at the time that she did, and all the evidence shows that no member of that crew was aware of that intention to get off until it was too late to render her any assistance.

"(3) That no reasonable inference can be drawn from the testimony except that the Pullman Company rendered to

the plaintiff all· the services and duties which were owed to her by the railroad company under its contract to carry."

Both motions were refused. After the charge of the Court, the jury returned the following verdict:

"We find for the plaintiff the sum of five hundred ($500-.00) dollars against the Pullman Company, acting as agent of the Southern Railway Company."

The "case" contains the following· statement:

"The attorneys for both defendants left the Court room for approximately 30 minutes when the jury retired, and notified the Court that they could be found at the office of Mr. Douglas McKay during that interim, and receiving no phone message in approximately 30 minutes, they returned to the Court room and found that·the jury had returned a verdict and had been discharged, and there was no opportunity for either of counsel to make any ojection as to the form of the verdict."

Thereafter the plaintiff gave notice of a motion to be made before his Honor, Judge Whaley, on March 31, 1925, "for an order entering up the above-entitled judgment in the manner required by law."

The defendant Southern Railway Company then served upon the plaintiff and upon the Pullman Company notice of a motion that if an order for judgment should be directed to be entered against the Southern Railway Company upon the said verdict, such order shall declare the Pullman Company primarily and the Southern Railway Company secondarily liable therefor.

The Pullman Company also served upon the plaintiff and upon the defendant Southern Railway Company notice of a motion that if an order for judgment should be directed to be entered against the Pullman Company upon the said verdict, such order shall declare the Southern Railway Company primarily and the Pullman Company secondarily liable therefor.

Upon the hearing of the several motions, the plaintiff moved for judgment upon the verdict against both of the defendants; the Southern Railway Company objected to any judgment being entered against it, on the ground that the verdict would not justify the rendition of such a judgment; the Pullman Company objected to any judgment against it, on the ground that it could be entered only against the Southern Railway Company. Each of the defendants then pressed its motion, as above referred to.

His Honor, Judge Whaley, thereupon signed an order directing the entry of judgment against both of the defendants, upon the ground "that the jury intended the effect of its finding to be a liability on the part of the carrier, Southern Railway Company, and its agent, the Pullman Company," and that as between these companies the Pullman Company was primarily and the Southern Railway secondarily liable upon the judgment directed to be entered against both.

From this order, and from the judgment entered upon the verdict, the defendants have separately appealed.

*Appeal of Southern Railway Company.*—The main objection, which only needs to be considered, of the Southern Railway Company, to the order directing judgment to be entered against it, is that the verdict was not a verdict against that company, and cannot legally support the judgment; that the words, "acting as agent of Southern Railway Company," merely indicate the particular delict of the Pullman Company.

The verdict upon its face is not against the Southern Railway Company; it is, "We find for the plaintiff the sum of five hundred ($500) dollars against the Pullman Company"; the words that follow "acting as agent of the Southern Railway Company" can be construed only as a finding that in the primary, individual duties imposed upon the Pullman Company, it was free from any charge of negligence, but that, as representing the railway company

in the discharge of duties imposed upon it, by the contract of carriage entered into between the railway company and the passenger, it was guilty. That finding of the jury, before it was crystalized into a verdict, of course would have justified the jury in formulating a verdict against both companies, and perhaps their intention was that it should have that effect; but there is nothing before us but conjecture as to such intention. They may have concluded that as the entire fault lay with the Pullman Company (so indicated by the verdict), that company, amply able to respond, should bear the entire burden, and that no verdict should be rendered against the railway company; we cannot tell. It is sufficient to say that they did not find a verdict against the railway company, and if so, no judgment of course could be entered against that company.

The case of *Campbell v. Seaboard Air Line R. Co.*, 83 S. C., 448; 65 S. E., 628; 23 L. R. A. (N. S.), 1056; 137 Am. St. Rep., 824, is ample authority for the proposition that a railroad company is not relieved of any of the duties which it owes to a passenger, by reason of the passenger's having made a separate contract with a sleeping car company for certain special accommodations; it cannot withdraw its own employees from this service and substitute and rely upon the sleeping car company and its employees to perform the service as persons acting apart from itself; when it relies upon such company, through its employees, to perform the public duties as a common carrier which it has assumed, the railroad company adopts them as its agents.

The Pullman Company thus became the agent of the carrier and liable to a passenger for dereliction of duty on the part of its employees which may have caused injury to such passenger. The liability of the railroad company and of the Pullman Company is joint and several, in the sense that the plaintiff had the right to sue either or both in the same action; that the railroad company would have been liable

if its agent the Pullman Company had been guilty of negligence, there can be no doubt, and it could have been sued separately. *Washington Gaslight Co. v. Lansden,* 172 U. S., 534; 19 S. Ct., 269; 43 L. Ed., 543. That the Pullman Company would have been liable if its employees had been guilty of negligence, even if in so acting they may be considered as the agents also of the railroad company, is equally free from doubt. Note 20 A. L. R., 139; note 25 L. R. A. (N. S.), 351; 2 C. J., 824, 825, 828.

So, then, if the plaintiff in the same action chooses to sue two persons who may be jointly and severally liable, against either of whom he could have proceeded by separate action, and recovers a verdict against only one of them, the other is necessarily discharged; the verdict standing good against the defendant named. This rule, however, is subject to the exception that where the master or principal is joined with the servant or agent, in an action based solely upon the tort of the servant or agent, and the verdict exculpates the servant or agent and holds the master or principal, the verdict is without support, as has been consistently held. *Jenkins v. Southern R. Co.,* 130 S. C., 180; 125 S. E., 912, and cases cited therein.

It has been suggested that the verdict should have been reformed upon motion of some of the counsel engaged in the case as soon as it was received. The "case" shows that the verdict was received by the Court in the absence of counsel for both sides; neither had the opportunity to have the verdict reformed. But, if all had been present, there certainly was no obligation on the part of counsel for the Southern Railway Company to put his neck in the halter after the jury had given him freedom.

I think therefore that the appeal of the Southern Railway Company should be sustained and the judgment declared void so far as it is concerned.

*The Appeal of the Pullman Company.*—Upon the motion for a directed verdict, it appears that there was abundant evidence of negligence on the part of

the employees of the company to require submission of the case to the jury. It tended to show that the plaintiff, an aged lady, was traveling alone; these facts at the outset required a reasonable degree of attention; she was entitled to notice of the arival of the train at her destination; the evidence tends to show that such notice was not given; she was entitled at least to a free and convenient exit from the car; the evidence tends to show that the vestibule doors at both ends of the car were closed when she attempted to leave the car; she was entitled to assistance in disembarking by footstool and help; the evidence tends to show that neither was afforded; she was compelled to pass through several coaches seeking an exit, and as she attempted to alight at an open place, she was thrown down by the movement of the train, at a point where no facilities or assistance were supplied. It is insisted that her fall was not a proximate result of the alleged negligence of the Pullman Company. We are of opinion that the sequence of events, beginning with the failure to announce the station, followed by the closing of the doors, the lack of attention, the hasty progress through the coaches, and the sudden movement of the train, was complete, as being the natural consequences, to be anticipated from the prime wrong. The motion for a directed verdict therefore was properly refused.

It is contended that his Honor committed error in applying to the Pullman Company the rule of highest degree of care, which is applicable as between carrier and passenger. It appears to be well settled that so far as the baggage and personal effects of a passenger are concerned, the sleeping car company is not held to the strict rule of the highest degree of care applicable to a common carrier; that as to them the company is not a common carrier (2 Hutch. Carr. § 1130; 5 Elliott, R. R. (3d Ed.), § 2450); but we have encountered no authority which sustains the proposition that as regards its duty to the person of the passenger, or the duties imposed upon the railroad company, as a common carrier of the passenger, which the sleeping car com-

pany may have assumed, the same rule should not be applied as to the railroad company. It would be remarkable to hold the carrier to the highest degree of care and its agent to a less degree. *Caldwell v. Pullman Co.,* 132 S. C., 321; 128 S. E., 504.

It is contended by the third exception that his Honor committed error in charging as follows: "If again you believe that the Southern Railway Company intrusted any duty which it owed to the plaintiff to the Pullman Company, and if you believe that the employees of the Pullman Company who were intrusted with that duty, if they were so intrusted, and negligently failed to carry out that duty, and that directly brought about injury to the plaintiff, then both would be liable"—upon the ground "that there was no evidence that the Pullman Company contracted to perform any duty beyond the obligation of its own contract to furnish special accommodations, and was liable to the passengers only within the terms of its particular contract."

The third, fourth, and fifth exceptions, under various conditions, raise practically the same contention, that the Pullman Company is not liable to the plaintiff for the acts of its employees while they were assuming to perform duties primarily imposed upon the railroad company in connection with the transportaion of the passenger.

There is a faint color for this contention in the opinion of the Court in the case of *Campbell v. Seaboard Air Line R. Co.,* 83 S. C., 448; 65 S. E., 628; 23 L. R. A. (N. S.), 1056; 137 Am. St. Rep., 824, where it is said: "Hence, with respect to those matters embraced in the contract of carriage, which the railroad company depends upon the employees of Pullman Company to perform, such employees [of the Pullman Company, we interpolate] are the agents of the railroad company." The inference sought to be drawn is that they are not therefore, as to such matters, the agents of the Pullman Company. We do not think that this is a necessary or a legitimate inference. That was an action against the railroad company, based upon certain delicts of

the Pullman Company's employees, in putting the plaintiff off at a station short of her destination. The railroad contended that the Pullman Company alone was responsible; the Court held that the employees were the agents of the railroad company—very far from holding that they were not also agents of the Pullman Company.

It is a matter of such common knowledge as to come within the judicial cognizance of the Court that ·the employees of the sleeping car company perform for passengers other services than those directly connected with the special accommodations which the passengers engage. They stand at the steps and assist in carrying baggage and embarking; in furnishing facilities for embarking; in announcing stations and assisting in disembarking. If these are not duties implied in the passenger's contract with such company, as I think they are, they are certainly within the apparent scope of the employment, authorized by the company, for a breach of which the company would be liable.

"Both the railroad company and the sleeping car company are jointly and severally liable for injuries caused to passengers on a sleeping car, through the negligence or wrongs of the sleeping car company's employees in respect to the passenger's transportation." 10 C. J., 1180.

"Indeed most of the authorities go even further and hold that the sleeping car company and its employees, at least as to all matters incident to the carriage except such as relate perculiarly to the sleeping car company's contract with the passenger, and that either or both companies may be liable in a proper case for the negligence or misfeasance of the sleeping car company's employees." 5 Elliott, R. R. (3d Ed.), 171.

As to matters directly connected with the special accommodations engaged, the rule is thus stated by this Court:

In *Taber v. Seaboard Air Line R. Co.*, 81 S. C., 317; 62 S. E., 311, among other delicts charged the plaintiff sought damages from a railroad company upon the ground

of the refusal of the porter on the Pullman car to make down her berth upon request. The Court said:

"Conceding that the porter was negligent, or even willfully disregardful of plaintiff's request in this matter, the defendant [railway company] is not liable in the absence of evidence connecting it with the special contract of the Pullman Company. The delict, if any, was a breach of duty by the Pullman Company, since it appertained peculiarly to the contract of that company to furnish berth accommodations as distinguished from the defendant's contract of safe and comfortable transportation."

The judgment of this Court should be that the judgment entered against the Southern Railway Company be annulled and that the judgment against the Pullman Company should be affirmed.